CHILD, INC., a Delaware Corporation, Henry E. I. duPont and Martha Verge duPont, Plaintiffs,

v.

Jan RODGERS, as Executrix of the Estate of William E. Taylor, Jr., the Estate of William E. Taylor, Jr., and Pioneer National Title Insurance Company, a California Corporation, Defendants.

Superior Court of Delaware, New Castle.

Submitted June 1, 1977.

Decided Aug. 3, 1977.

Richard S. Gebelein, of Wilson & Whittington, P. A., Wilmington, for plaintiffs.

George F. Gardner, III and William A. Denman, of Schmittinger & Rodriguez, P. A., Dover, for defendant, Pioneer National Title Ins. Co., a California corporation.

Samuel R. Russell, of Biggs & Battaglia, Wilmington, for defendants Jan Rodgers, as Executrix of the Estate of William E. Taylor, Jr. and The Estate of William E. Taylor, Jr.

WALSH, Judge.

This is an action for attorney malpractice and breach of contract on a policy of owner's title insurance. The defendants, the Estate of a deceased attorney and a title insurance company, have moved for summary judgment on various grounds. The facts will be viewed from a perspective which favors plaintiffs as the non-movants.

Plaintiffs, Henry E. I. duPont and Martha Verge duPont (duPonts), retained attorney William E. Taylor, Jr. (Taylor) to pro-

vide tax advice and to conduct a title examination of certain real estate they had contracted to purchase. The intended grantee, however, was not the duPonts, but a non-profit corporation, Child Foundation, established by the duPonts to accomplish certain charitable goals and provide a vehicle for tax reduction. Settlement on the property was held on July 6, 1972, and an owner's title insurance policy obtained by Taylor from defendant, Pioneer National Title Insurance Company (Pioneer), was delivered to the grantee, Child Foundation. On December 29, 1972, because of the alleged failure of Taylor to qualify Child Foundation as a tax-exempt corporation, a series of transactions ensued involving the duPonts and their corporate *alter egos*. The property first was transferred by The 1066 Foundation, the new name of Child Foundation, to Henry E. I. duPont, who joined by his wife, transferred the property to The Child Foundation, predecessor corporation of the present plaintiff, Child, Inc.[1]

On July 3, 1975, The Child Foundation, contracted to sell the property to Community Housing, Inc. for $65,000. After title examination, Community Housing, Inc. refused to proceed to settlement because of an alleged restrictive covenant in the chain of title. On November 27, 1975, Taylor died and on December 1, 1975, Letters Testamentary were issued to his executrix, defendant Rodgers. On April 28, 1976, The Child Foundation filed suit against Taylor's estate. Originally, Pioneer was also a plaintiff, but has since realigned itself as a defendant and has filed a cross-claim against Taylor's estate. On August 30, 1976, a motion to amend the complaint to add the duPonts as parties' plaintiff was granted, without prejudice to defendants' summary judgment position.

duPonts claim that Taylor negligently conducted a title search and thereby reduced the value of the property they donated to Child Foundation. They also allege a failure by Taylor to qualify Child Foundation as tax-exempt, thereby necessitating the subsequent transfers in December, 1972. The duPonts also claim to be third-party beneficiaries of the contract between Pioneer and Child Foundation since they paid for the title insurance and Pioneer's refusal to indemnify them is a breach of the title insurance contract. Plaintiff, Child, Inc., as the corporate successor to Child Foundation, also seeks recovery against Pioneer for breach of the title insurance contract and against Taylor for negligence. Its claimed damages arise from the unmarketability of the title and its liability to Community Housing, Inc. for failure to perform under its sale contract.[2]

Pioneer has cross-claimed against Taylor,[3] asserting that it is entitled to indemnification from Taylor's estate by reason of his negligence under the agency contract. Taylor has moved for summary judgment against plaintiffs on four grounds, three of which involve various statutes of limitations. Additionally, he contends that the December, 1972, transfer of the property from The 1066 Foundation to duPont terminated his liability to all plaintiffs. Taylor has also moved for summary judgment with respect to Pioneer's cross-claim contending that the December transfer also terminated Pioneer's liability to plaintiffs. Pioneer's motion for summary judgment against plaintiffs is bottomed on the assertion that neither Child, Inc. nor the duPonts is an "insured" under its title policy. Pioneer also contends that the December, 1972,

---

1. Child, Inc. began as Boys' Home of Delaware, Inc. in 1963 and took the name "The Child Foundation" after the original "Child Foundation" changed its name to The 1066 Foundation.

2. Child, Inc. has filed an action, in the Court of Chancery, for specific performance against Community Housing, Inc. to determine whether the restrictive covenant is enforceable. A decision in that matter is pending and may well

moot the question of title marketability. Even if Child, Inc. is successful in that litigation, it would seek to recover the costs of that litigation and other expenses attendant upon the clearing of title.

3. Although the Executrix of Taylor's estate is the named defendant, for simplicity, I will refer throughout to "Taylor" since it is his actions which are under scrutiny.

transfer from The 1066 Foundation to du-Pont terminated any liability Pioneer has to plaintiffs under any theory of recovery.

Turning first to the duPonts' claim against Taylor for failing to qualify Child Foundation as tax-exempt, at oral argument plaintiffs' counsel conceded that the applicable statute of limitations had run before that claim had been filed. Accordingly, summary judgment will be entered in favor of Taylor's estate on that claim.

Turning next to the duPonts' claim against Taylor for negligent performance of a title examination, Taylor asserts that the claim is barred by the three year statute of limitation contained in 10 *Del.C.* § 8106 since the complained of negligence occurred in July, 1972, and the original complaint not filed until April, 1976. Taylor further asserts that even if the cause of action accrued at some later date, the claim is barred by the six month limitation period on claims against decedents' estates, set forth in 12 *Del.C.* § 2102, because the motion to add the duPonts as parties-plaintiff was not filed until August 30, 1976, more than six months after letters testamentary were issued.

■ With respect to the time the cause of action accrued, the reasoning of *Isaacson, Stolper & Co. v. Artisan's Savings Bank,* Del.Supr., 330 A.2d 130 (1974) governs. The duPonts relied on the expertise of Taylor to conduct a thorough title search and advise them of any restrictions of record. Here, as in *Isaacson,* the plaintiffs were not aware they had suffered a loss until a third party, Community Housing, Inc. "triggered" the cause of action. There were no observable or objective factors which, as laymen, put them on notice of a defect. Cf. *Lembert v. Gilmore,* Del.Super., 312 A.2d 335 (1973). Under these circumstances, the cause of action did not accrue until some time after July 3, 1975, the date of the contract of sale with Community Housing. Since the complaint and the amended complaint adding the duPonts as parties were filed in 1976, the action is not barred by 10 *Del.C.* § 8106.

■ A different problem is presented by Taylor's assertion of the applicability of the six month limitation period on claims against decedents' estates. The original complaint was filed on April 28, 1976, within the six month period, but the amendment adding the duPonts was filed after the limitation period. Superior Court Civil Rule 15(c), however, contemplates amendments to pleadings that change parties to the action. Such amendments relate back to the date of the original pleading under certain conditions. *Mergenthaler, Inc. v. Jefferson,* Del.Supr., 332 A.2d 396 (1975). Since the Rule is modeled after Federal Rule 15, *Filliben v. Jackson,* Del.Supr., 247 A.2d 913 (1968), it is clear that while Rule 15(c) refers to an amendment changing the party against whom a claim is asserted, it is also applicable to an amendment changing or adding a plaintiff. *Yorden v. Flaste,* D.Del., 374 F.Supp. 516 (1974). And, "As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." 6 *Federal Practice and Procedure* § 1501, Wright and Miller (1971).

■ Taylor was served with the original complaint within the six months limitation period and was then on notice that a claim was being made for negligently conducting a title examination. Whether the claim be asserted by the duPonts or Child, Inc., the "threshold question of liability remains the same;". *Yorden v. Flaste, supra,* 374 F.Supp. 521. No prejudice will result by permitting the amendment since only one recovery may be obtained on behalf of whomever is determined to be the title owner. The duPonts' claim against Taylor arising out of the title search is substantially the same claim asserted in the original complaint by The Child Foundation. Thus, the duPonts are proper parties-plaintiff and the amendment relates back to April 28, 1976.

The sufficiency of the remaining claims, counterclaims and defenses can be decided

by determining the effect, if any, of the December, 1972 transfers of the property. Both Pioneer and Taylor contend that the series of transfers, from The 1066 Foundation, to Henry E. I. duPont, to The Child Foundation, terminated any liability they had to all plaintiffs. Pioneer asserts that neither Child, Inc. nor the duPonts is its insured. Similarly, Taylor contends that Child, Inc. was never his client. The cross-claim, of course, depends upon whether Pioneer is found liable to the plaintiffs.

■ Plaintiffs allege, and for purposes of this motion the allegations are assumed to be true, that the so-called "correctional deeds" were necessitated by Taylor's negligence in failing to qualify the original grantee, Child Foundation, as tax-exempt. Thus, shortly before the close of the tax year, they were forced to go through the series of conveyances to realize the intended tax advantage. Taylor contends that Child, Inc. is not a successor to Child Foundation since Child, Inc. started as Boys' Home of Delaware, Inc. Thus, the argument runs, Child, Inc. was not his client. It is clear, however, that Taylor knew the property was acquired by Child Foundation for the purpose of providing a tax advantage to the duPonts. As a direct result of Taylor's delay in qualifying Child Foundation as tax-exempt, the duPonts were forced to engage in the last minute transfers. The transferee of the property, The Child Foundation, adopted both the charter of Child Foundation and the name. It would be sheer irony to permit Taylor to defeat a claim based on his client's change of identity where the change was required to remedy his error. Under these circumstances, I hold that Child, Inc. has succeeded to the interests of Child Foundation; is one of the parties for which the title search was done and, therefore, has standing to maintain an action for damages against Taylor.

A somewhat different question is presented by Pioneer's assertion that the December transfers terminated its liability to the plaintiffs. While the attorney-client relationship and the consequences of Taylor's negligent tax advice provide a basis for holding that Child, Inc. is a successor to Child Foundation and for permitting Child, Inc. to maintain its suit against him, that holding does not extend to Child, Inc.'s claim against Pioneer. Taylor was not Pioneer's agent for tax advice. Thus, the question of whether Child, Inc. is a successor to Child Foundation arises in the context of whether Child, Inc. is Pioneer's insured under the terms of the title insurance contract.

Paragraph "1" of the "Conditions and Stipulations" portion of the title insurance contract defines an insured as follows:

"(a) 'Insured': The insured named in Schedule 'A', and subject to any rights or defenses the company may have had against the named insured, those who succeed to the interest of such insured, by operation of law, *as distinguished from purchase, including, but not limited to,* heirs, distributees, devisees, survivors, personal representatives, next of kin or corporate or fiduciary successors." (Emphasis supplied)

Pioneer argues that the transfers constituted a succession to Child Foundation's interest in the property other than "by operation of law" and therefore was a "purchase" within the meaning of the policy. Pioneer contends that "purchase" means the acquisition of real estate by other than descent (Black's Law Dictionary) and thereby excludes Child, Inc. as an insured. Contrary to Pioneer's contention, however, the policy itself does not place such a restrictive meaning on the words "by operation of law". While the policy does distinguish "by operation of law" from "purchase", it defines succession by operation of law as "including, *but not limited to,* heirs, distributees . . . corporate or fiduciary successors." The phrase "by operation of law" should not be accorded the limited, self-serving meaning placed upon it by Pioneer particularly in view of its role as the drafting party now seeking to avoid liability through a restrictive interpretation. *Novellino v. Life Insurance Co. of North*

*America,* Del.Supr., 216 A.2d 420 (1966); *Lamberton v. Travelers Indemnity Company,* Del.Super., 325 A.2d 104, aff'd 346 A.2d 167 (1975).

■ It is undisputed that the December, 1972, transactions were between the duPonts and two corporations of which they were the sole shareholders. It is also undisputed that no consideration was given for the transfers nor did a third party succeed to any interest in the insured title. Although the duPonts were intervening transferees in the December, 1972, transactions, they were mere conduits for tax purposes. I conclude that Child, Inc. succeeded by operation of law to Child Foundation's interest in the land by adopting the corporate charter of Child Foundation and taking its name. Pioneer has not alleged that the risk against which it insured was in any way changed by the transfers. Indeed, it is recognized that, unlike fire and accident policies, which extend for fixed terms and may involve a reappraisal of risk at the end of a term, title insurance policies are without time limit and not subject to review of risk since they insure solely on events irretrievably past. *Sandler v. N. J. Realty Title Ins. Co.,* 36 N.J. 471, 178 A.2d 1 (1962). Since the language of the policy may be fairly construed to include corporate successors, Child, Inc. is Pioneer's insured and entitled to bring its claim against Pioneer for breach of contract.

■ Finally, with respect to the duPonts' claim against Pioneer, I am satisfied that the policy definition of insured prevents them from recovering under a third party beneficiary theory. It is clear that their interest were clearly nominal and transitory for tax purposes. As noted previously, there can be only one recovery on behalf of the real title holder. To permit a fragmenting of title would expose the title insurer to risks beyond the contemplation of the parties and the language of the title policy. *Sandler, supra.*

In summary, Taylor's motion for summary judgment against all plaintiffs for the alleged negligent title search is denied. Taylor's motion for summary judgment against the duPonts for failing to qualify Child Foundation as tax-exempt is granted. Pioneer's motion for summary judgment against Child, Inc. is denied. Pioneer's motion for summary judgment against the duPonts is granted. Taylor's motion for summary motion against Pioneer is denied.

IT IS SO ORDERED.