PIONEER NATIONAL TITLE INSUR-
ANCE COMPANY, a California Corpo-
ration, Defendant Below, Appellant,

v.

CHILD, INC., a Delaware Corporation,
Plaintiff Below, Appellee.

Jan RODGERS, as Executrix of the Estate
of William E. Taylor, Jr., and the Estate
of William E. Taylor, Jr., Defendants
Below, Appellants,

v.

CHILD, INC., a Delaware Corporation,
Henry E. I. du Pont and Martha Verge
du Pont, Plaintiffs Below, Appellees.

Supreme Court of Delaware.

Submitted Nov. 27, 1978.

Decided March 9, 1979.

George F. Gardner, III, of Biondi and Babiarz, P. A., Dover, and William A. Denman, of Schmittinger & Rodriguez, P. A., Dover, for Pioneer National Title Insurance Co.

Richard S. Gebelein, of Wilson & Whittington, Wilmington, and Richard Allen Paul, of Paul, Lukoff & Hurley, Wilmington, for Child, Inc. and Henry E. I. du Pont and Martha Verge du Pont.

Wayne N. Elliott, of Prickett, Ward, Burt & Sanders, Wilmington, for Estate of William E. Taylor, Jr.

Before DUFFY, McNEILLY and QUILLEN, JJ.

DUFFY, Justice:

In this complex case based on alleged malpractice by an attorney and on breach of a title insurance contract, the Superior Court granted summary judgment to certain parties and denied it to others. *Child, Inc. v. Rodgers, et al.,* Del.Super., 377 A.2d 374 (1977). However, only part of the Court's order is before us on appeal and we focus entirely on it.

A full statement of the facts appears in the Superior Court opinion beginning at 377 *A.2d* 375, and we will not repeat them here. For present purposes, it is sufficient to say that Child, Inc., a Delaware corporation, holds legal and beneficial title to certain real property as to which Pioneer National Title Insurance Company, a California corporation, had issued a policy of title insurance in the principal amount of $85,000. Child, Inc. seeks to recover from Pioneer certain expenses which it incurred in removing a defect in the title. The policy had been issued to Child Foundation, a different corporation, and Pioneer argues that Child, Inc. is not its insured.

The Superior Court denied Pioneer's motion for summary judgment against Child, Inc. after concluding that the latter had "succeeded by operation of law to Child Foundation's interest in the land by adopting the corporate charter of Child Foundation and taking its name." Pioneer then docketed this appeal. The Court also denied a motion for summary judgment made by the Estate of the attorney against all plaintiffs.[1] The Estate has appealed that ruling.

We first consider the Pioneer appeal.

**I**

■ In a controversy involving a title insurance policy, the Supreme Court of New Jersey said this:

"A title insurance policy is a contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to, or liens or encumbrances upon realty in which the insured has an interest. See *Ocean View Land Co. v. West Jersey Title Co.,* 71 N.J.L. 600, 605, 61 A. 83 (E. & A.1905). As such, it is subject to the same rules of construction as are other insurance policies. 9 Appleman, Insur-

1. The attorney, William E. Taylor, Jr., died on November 27, 1975.

ance Law and Practice, § 5201 (1943), 29 Am.Jur., Insurance, § 245.

Basic to this problem of construction is a recognition of the principle that in such policies the pharseology [sic] must be liberally construed in favor of the insured and strictly construed against the insurer."

*Sandler v. N. J. Realty Title Ins. Co.,* N.J. Supr., 36 N.J. 471, 178 A.2d 1, 5 (1962). We adopt the definition of a title insurance policy and the rules of construction applied to it by the New Jersey Court.

Here, the title policy issued by Pioneer to Child Foundation defines the "insured" as:

"The insured named in Schedule 'A' and subject to any rights or defenses the company may have had against the named insured, those who succeed to the interest of such insured, by operation of law, as distinguished from purchase, including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin or corporate or fiduciary successors."

The insured named in Schedule A is "Child Foundation." On the face of the policy, and under *Sandler,* Pioneer is thus obligated to indemnify Child Foundation against any loss caused by a defect of title. But that corporation does not assert the claim in this litigation.[2] It is, rather, Child, Inc. which makes the claim in its own right and as a successor to the named insured.

Under the policy, the "insured" includes "those who succeed" to the insured's interest "by operation of law" and, in interpreting that phrase, the Superior Court construed it against Pioneer as the insurer (and the drafting party). See *Novellino v. Life Insurance Co. of North America,* Del.Supr., 216 A.2d 420 (1966); *Lamberton v. Travelers Indemnity Company,* Del.Super., 325 A.2d 104 (1974); *aff'd* 346 A.2d 167 (1975). Upon so doing, the Court held that Child, Inc. was Pioneer's insured because it was a corporate successor to Child Foundation.

We agree that the key phrase in the controversy is "operation of law" and that construction thereof is required. And we agree that in the search for meaning, ambiguities and any uncertainty of meaning or language should be resolved against Pioneer. This presupposes, of course, that two or more meanings may be given to the language under scrutiny. It does not mean that because we do not know for certain what is intended that the ruling goes against Pioneer.

The Superior Court did not cite a case or any statutory law for its conclusion that Child, Inc. had succeeded by operation of law to Child Foundation's interest in the land by adopting the latter's corporate charter and taking its name. We recognize that for certain corporate or charitable purposes, Child, Inc. may be the legal successor to Child Foundation. But our inquiry is not that general. We must focus on Child, Inc.'s status as successor "by operation of law" within the meaning of the title policy. And, as to that, in our judgment, the Trial Court gave the voluntary acts of the title holders, and those who controlled them, a legal significance unwarranted by the facts, the contract or by general law.

## II

"Operation of law" is a generic term or phrase commonly used to express the manner in which rights (and/or liabilities) attach to a person by the "mere application to the particular transaction of the established rules of law, without the act or cooperation" of that person. *Black's Law Dictionary* (4 ed).

A somewhat more practical statement of its meaning appears in 67 *C.J.S.* at page 877:

"*Operation of law.* The obligation of law, its practical working and effect. It is a term applied to indicate the manner in which a party acquires rights without any act of his own. In its usual signification, 'operation of law' is generally appli-

---

2. Indeed, Child Foundation (the corporate name had been changed to "The 1066 Foundation") was dissolved on January 4, 1973.

cable to matters involving title and refers to situations in which rights, and sometimes liabilities, are created without action by the parties."

In "practical working and effect," the term indicates the manner in which a person acquires rights without any act of his own. *Merdzinski v. Modderman*, Mich.Sup. Ct., 263 Mich. 173, 248 N.W. 586 (1933). And the "operation" or impact of the law upon the particular transaction,[3] without more, is to be contrasted with events caused by the voluntary action of the parties. In the latter case, the result is not caused by operation of law. Cf. *Emporium Capwell Co. v. Anglim*, D.Ct., N.D.Cal., 48 F.Supp. 292, 294 (1943). Apart from statute or other special circumstance, one's voluntary act cannot create or enlarge one's rights by imposing liability on or enlarging the liability of another. Compare the discussion in *American Bitumuls & Asphalt Co. v. United States*, U.S.Cust.Ct., 146 F.Supp. 703, 713.[4]

### III

■ Turning now to the facts in this case, Pioneer issued its title policy to Child Foundation on July 6, 1972, the date on which the latter acquired title. Near the end of that year, December 29 to be specific, title was transferred from Child Foundation (then known as "The 1066 Foundation") to W. Henry du Pont (now named Henry E. I. du Pont) who (with his wife) conveyed it to The Child Foundation, which the Superior Court said was a "predecessor corporation" of Child, Inc., the present plaintiff.

The implicit purpose of all of this was to establish for Mr. and Mrs. du Pont a charitable deduction for income tax purposes. That appears to us to have been a perfectly permissible objective because the du Ponts had financed the purchase of the property

in the first instance and the attorney handling the transaction had failed to qualify Child Foundation (as an exempt corporation) under the governing tax laws. But to say this is not to conclude that the transactions enlarged the coverage under Pioneer's contract with Child Foundation. On the contrary, we conclude that they do not. Every one of the transactions (including the adoption of The Child Foundation's name, purpose and charter by Child, Inc.) was voluntary on the part of the individual and corporate persons involved. For that reason, and under the authorities cited above, we hold that Child, Inc. did not "succeed to the interest of . . . [the] insured, [Child Foundation]" by operation of law within the meaning of the policy. Thus, Child, Inc. does not have a legally cognizable claim under the policy against Pioneer.

### IV

We now turn to the du Ponts' claim against the Estate of William E. Taylor, Jr. The amended complaint alleges that the du Ponts had retained Taylor, an attorney, to perform the necessary legal services (including arrangements for title insurance) incident to the July 6, 1972 settlement on the purchase of the property by Child Foundation. The du Ponts contend that Taylor was negligent in performing the examination of title in that he failed to discover and disclose that the title was defective, that as a result of such negligence they were induced to pay the seller the sum of $85,000 for the property, to which it did not have a clear and marketable title, and that they were damaged by such negligence.

■ The Superior Court held that, under *Isaacson, Stolper & Co. v. Artisan's Savings Bank*, Del.Supr., 330 A.2d 130 (1974), the claim was not barred by the three-year

---

3. Upon the death of one of two joint tenants, for example, title to the whole is vested in the surviving joint tenant by operation of law—i. e., an established rule of law (right of the surviving joint tenant to take) is applied to the particular transaction (death of a joint tenant) without any act by the survivor.

4. And compare 8 *Del.C.* § 259 which provides, in effect, that upon merger or consolidation of Delaware corporations all rights and liabilities of each are transferred to the surviving or resulting corporation by operation of law. See Folk, *The Delaware General Corporation Law* § 259 p. 366.

statute of limitations.[5] 10 *Del.C.* § 8106. The Court held that the cause of action did not accrue until a contract was made to sell the property; that occurred on July 3, 1975 and it is undisputed that the complaint was filed and the du Ponts joined within three years from that date. We agree with the Court's analysis of and application of the time of discovery rule to this aspect of the case. Cf. *Isaacson, Stolper & Co. v. Artisan's Savings Bank, supra.*

■ Taylor also argues that the du Ponts' claim is barred by the six-month limitation on a claim against a decedent's estate. 12 *Del.C.* § 2102. The du Ponts' claim was not asserted until after the six-month period had ended but the complaint by Child, Inc. was filed before the period ended. The facts appear at 377 *A.2d* 376, 377. We think that the Court properly applied Superior Court Civil Rule 15(c) and the approach taken in *Mergenthaler, Inc. v. Jefferson,* Del.Supr., 332 A.2d 396 (1975), and held that the claim asserted by the du Ponts when they joined as plaintiffs relates back to the date of the original complaint; thus the claim was timely asserted.

■ Finally, Taylor argues that by assigning the contract to purchase the property to Child Foundation, the du Ponts had lost any right which they may have had to sue him. And he argues that the du Ponts were not his clients with respect to the transaction in question. These contentions are without merit for the reasons stated in the Trial Judge's opinion. 377 *A.2d* at 378.

Affirmed in part; reversed in part.

---

**5.** The Court also ruled that the du Ponts' claim against Taylor for failing to qualify Child Foundation as a tax-exempt entity under the governing law was barred by the applicable statute of limitations. That issue is not before us in this appeal.