In Re MAXXAM, INC./FEDERATED DEVELOPMENT SHAREHOLDERS LITIGATION.

NL INDUSTRIES, INC., et al., Plaintiffs,

v.

MAXXAM, INC., a Delaware corporation, MCO Properties, Inc., a Delaware corporation, Federated Development Co., a New York business trust, Charles E. Hurwitz, Barry Munitz, Ezra G. Levin, John M. Seidl, William C. Leone, and Stanley D. Rosenberg, Defendants.

Civil Action Nos. 12111, 12353.

Court of Chancery of Delaware, New Castle County.

Submitted: April 24, 1996.
Decided: Sept. 10, 1996.

Joseph A. Rosenthal, of Rosenthal, Monhait, Gross & Goddess, Wilmington, Silverman, Harnes & Harnes, New York City, and Lowey Dannenberg Bemporad & Selinger, New York City, for Shareholder Plaintiffs.

Henry N. Herndon, Jr. and Joseph C. Schoell, of Morris, James, Hitchens & Williams, Wilmington, and Donald E. Scott and Lester C. Houtz, of Bartlit, Beck, Herman, Palenchar & Scott, Denver, CO, for Plaintiff NL Industries, Inc. et al.

A. Gilchrist Sparks, III, R. Judson Scaggs, Jr. and David J. Teklits, of Morris, Nichols, Arsht & Tunnell, Wilmington, David C. McBride, of Young, Conaway, Stargatt & Taylor, Wilmington, Lawrence C. Ashby, Richard D. Heins and John S. Grimm, Ashby & Geddes, Wilmington, for Defendants.

*OPINION*

JACOBS, Vice Chancellor.

Pending are two related post-trial motions in this consolidated shareholder derivative action brought on behalf of MAXXAM, Inc. ("MAXXAM") and its wholly owned subsidiary, MCO Properties, Inc. ("MCOP"). The defendants are certain directors of MAXXAM, and Federated Development Co., ("Federated"), which is MAXXAM's controlling stockholder.

The plaintiffs' claims arise out of two distinct transactions: (1) a $25 million loan made by MCOP to Federated in August and November, 1987 (the "1987 Loan transaction"); and (2) MAXXAM's purchase of a luxury resort development (known as "the Mirada") from Federated in 1991 in exchange for MAXXAM's forgiveness of the 1987 loan principal, plus accrued interest and other consideration all totaling $43 million (the "1991 Mirada exchange transaction").[1]

The case was tried over a two week period beginning January 29, 1996. The merits are presently *sub judice.* During the trial, counsel learned for the first time that the shareholder plaintiff who claimed to have standing to challenge the 1987 Loan transaction did not, in fact, own stock in MAXXAM's predecessor, MCO Holdings, Inc. ("MCO") or MCO's wholly owned subsidiary, MCOP, at the time of that transaction. Armed with that new information, the defendants moved to dismiss the 1987 Loan transaction claims. The basis for that dismissal motion, made pursuant to Chancery Court Rule 41(b), is that 8 *Del. C.* § 327 requires the plaintiff in a derivative action to aver that he or she was a stockholder at the time of the alleged wrongdoing. Because none of the plaintiffs ever held stock in MAXXAM (formerly MCO) continuously since 1987, defendants conclude

that dismissal of the 1987 Loan claims is legally required.

To cure the standing deficiency, plaintiffs' counsel located Mr. Harry Lewis, a MAXXAM stockholder who held his MAXXAM (MCO) stock continuously since 1987. The plaintiffs then filed the second pending motion, to permit Mr. Lewis to intervene as a party plaintiff pursuant to Chancery Court Rule 24. The defendants contest that motion on various grounds.

This is the decision of the Court on both motions. For the reasons stated below, the plaintiffs' motion to intervene will be granted, and the defendants' motion to dismiss will be denied.

## I. *FACTS*

Although many of the critical facts have been reviewed at length in the Court's earlier Opinions,[2] a brief recapitulation is helpful background to understand the issues presented.

MAXXAM is the latest evolution of an entity that was the product of several mergers involving MCO, MCOP, and MAXXAM Group, Inc. ("MAXXAM Group"). Before 1988, MCOP was a wholly owned subsidiary of MCO, which was controlled by Federated. MAXXAM Group was also controlled by Federated, although it was not otherwise connected to MCO or MCOP at the time of the 1987 Loan transaction. In May 1988, MAXXAM Group was merged with and into a wholly owned subsidiary of MCO, and in October 1988, MCO was renamed "MAXXAM, Inc." (MAXXAM). In this fashion, MAXXAM became the corporate successor to MCO.

Federated, a New York Business Trust, owned a controlling interest in MCO (MAXXAM) and controlled the above mentioned

1. In 1987 Federated and MCOP executed two agreements whereby MCOP loaned Federated $25 million to enable Federated to develop certain land located in Rancho Mirage, California (the "Mirada"). In 1991, after the 1987 Loans became non-performing assets, Federated sold the Mirada to MAXXAM in exchange for cancellation of the 1987 loans, including accrued interest, plus other consideration totaling approximately $43 million.

2. *See In re MAXXAM, Inc./Federated Dev. Shareholders Litig.,* Del. Ch., 659 A.2d 760 (1995) (rejecting a proposed settlement agreement); *In re MAXXAM, Inc./Federated Dev. Shareholders Litig.,* Del. Ch., Cons. C.A. No. 12111, Jacobs, V.C., 1995 WL 376942 (June 21, 1995) (denying the defendants' motion to dismiss certain claims).

MAXXAM-related entities at all relevant times. Federated, in turn, is wholly owned by the defendant Charles Hurwitz ("Hurwitz"), and members of the Hurwitz family and various Hurwitz family trusts.

The first of the (now consolidated) derivative complaints was filed on May 28, 1991. That complaint alleged that the directors of MAXXAM had breached their fiduciary duties by approving the 1987 Loan transaction and the 1991 Mirada exchange transaction (*Progressive United Corp. v. MAXXAM, Inc.*, C.A. No. 12111). Six months later, in November 1991, NL Industries ("NL") and its Chairman, Harold Simmons (suing in a fiduciary capacity) filed a separate action alleging similar fiduciary claims against the same defendants, but attacking only the 1991 Mirada transaction (the "NL Action").[3]

After the commencement of the NL action, five new lawsuits challenging the 1991 Mirada exchange transaction were brought in this Court against the same defendants.[4] Three of those lawsuits also challenged the 1987 Loan transaction. Of the several plaintiffs named in the seven different complaints, only one—Joseph Kassoway—claimed to have been a stockholder of MAXXAM continuously since the time of the 1987 Loan transaction.

On February 3, 1992, this Court ordered that the shareholder derivative actions be consolidated with the NL action. In the consolidated complaint, filed on February 28, 1992, the plaintiffs claimed that Federated had breached its fiduciary duties to MAXXAM by mismanaging the Mirada properties and by substituting less valuable real estate assets as collateral for the 1987 loans. That complaint also alleged that Federated had breached its fiduciary duties to MAXXAM by negotiating and approving the 1991 Mirada exchange transaction.

In their first amended complaint, the plaintiffs dropped their challenge to the 1987 Loan transaction. However, in January, 1993, the plaintiffs revived their 1987 Loan transaction claims by seeking leave to file a proposed second amended complaint that challenged both the 1987 loans and the 1991 Mirada exchange transaction. The proposed second amended complaint, like its predecessors, alleged that Mr. Kassoway had owned his shares of MAXXAM and of MAXXAM's predecessor, MCO, continuously since 1984.

The defendants opposed the requested amendment on the ground that the 1987 Loan transaction claims were barred by the three year statute of limitations found at 10 *Del. C.* § 8106. The Court denied leave to file the proposed second amended complaint, but it did permit plaintiffs to replead. *See In re MAXXAM, Inc./Federated Dev. Shareholders Litig. (N.L. Indus., Inc. v. MAXXAM, Inc.)*, Del. Ch., Cons.C.A. Nos. 12111 & 12353, Jacobs, V.C. (Apr. 13, 1993), Letter Op. at 8, 1993 WL 125533. That ruling led to the filing of a third amended complaint, dated April 22, 1993, which also challenged the 1987 Loan transaction, and again alleged that Mr. Kassoway had been a stockholder of MAXXAM (and MCO) continuously since 1984.

On July 6, 1994, the plaintiffs filed and served their fourth amended complaint, again challenging the 1987 Loan transaction and alleging that Mr. Kassoway had been a stockholder of MAXXAM continuously since 1984.[5]

---

**3.** NL and Simmons purchased their MAXXAM shares after the 1987 Loan transaction. Hence, they never had standing to challenge the 1987 Loans.

**4.** *Kahn v. Federal Dev. Co.*, C.A. No. 12373; *Glinert v. Hurwitz*, C.A. No. 12383; *Friscia v. MAXXAM, Inc.*, C.A. No. 12390; *Kassoway v. MAXXAM, Inc.*, C.A. No. 12404; and *Thistlewaite v. MAXXAM, Inc.*, C.A. No. 12377.

**5.** Mr. Kassoway claims never to have seen the second, third or fourth amended complaints filed on his (and the other shareholders') behalf. According to Mr. Kassoway's interrogatory answers, Kassoway's attorney, Mr. Philips, requested that his client confirm his stock ownership at some point in 1992 or 1993. Mr. Kassoway's affidavit states that he did not hear from any attorneys in this matter from the time when he first signed the first complaint in 1991 until January 1996, shortly before the trial. The shareholder plaintiffs' counsel have failed to explain adequately the reasons for the inaccurate statements concerning Mr. Kassoway's ownership of MAXXAM and MCO stock in all of the various complaints filed during that entire period.

After the filing of the fourth amended complaint, the parties reached an agreement to settle all of the plaintiffs' claims. NL opposed that settlement. After a hearing, this Court rejected the settlement on the ground that the settling parties had erroneously and materially undervalued the 1987 Loan transaction claims, which rendered the settlement consideration inadequate. *See In re MAXXAM, Inc./Federated Dev. Shareholders Litig.,* Del. Ch., 659 A.2d 760, 777 (1995).

In March 1995, the NL action was consolidated with the remaining shareholder actions. Thereafter, the defendants moved to dismiss the 1987 Loan transaction claims alleged in the fourth amended complaint, on the ground that those claims were barred by the statute of limitations. The Court denied that motion. *In re MAXXAM, Inc./Federated Dev. Shareholders Litig.,* Del. Ch., Cons. C.A. Nos. 12111 & 12353, Jacobs, V.C. (June 21, 1995), Mem. Op. at 21, 1995 WL 376942.

As earlier noted, these actions were tried on the merits in late January and early February, 1996. During the trial, the plaintiffs furnished to the defendants Mr. Kassoway's affidavit, which stated that he had held 500 shares of *MAXXAM* stock continuously since 1984. However, unlike the second, third and fourth amended complaints, the Kassoway affidavit did *not* state that Kassoway had also held *MCO* stock continuously since 1984. That discrepancy prompted the defendants to investigate, and later to verify, that Mr. Kassoway had never owned any MCO shares. Rather, it turned out that Kassoway had held 500 shares of *MAXXAM Group* stock continuously since 1984, but had acquired his interest in *MAXXAM* (formerly MCO) only after the 1988 MAXXAM Group/MCO merger.

The bottom line is that Mr. Kassoway was not a stockholder in MCO ("MAXXAM") at the time of the 1987 Loan transaction, even though the second, third, and fourth amended complaints alleged that he was. All parties now concede that Mr. Kassoway lacks standing to challenge the 1987 Loan transactions, and it is undisputed that no other plaintiff (including NL) has standing to challenge those transactions, because none of them owned MCO stock in 1987 either.

After defense counsel informed the plaintiffs' counsel of their objection to Mr. Kassoway's standing to attack the 1987 Loan transaction, plaintiffs' counsel sought to locate a MAXXAM shareholder who had held MCO (MAXXAM) stock continuously from the time of the 1987 loans. On February 1, 1996, one of plaintiffs' counsel promptly located Mr. Harry Lewis, informed him that a "standing" problem had arisen in the litigation, and asked Mr. Lewis if he was a longtime shareholder of MAXXAM. Mr. Lewis responded in the affirmative. After becoming further educated about the standing dispute, Mr. Lewis confirmed his willingness to become involved in the litigation, and authorized counsel to take the necessary steps to accomplish that purpose. The plaintiffs then moved to intervene Mr. Lewis as a party plaintiff.

## II. *THE PARTIES' CONTENTIONS*

The defendants' primary argument is that because no plaintiff ever had standing to challenge the 1987 Loan transaction, this action was a legal nullity from the very beginning insofar as the 1987 Loan claims are concerned. For that reason, defendants contend, those claims cannot be revived by intervention. Moreover, defendants urge, even if those claims could be revived in different circumstances, that cannot be done here, because Mr. Lewis's intervention motion comes too late. The reason, defendants say, is that (i) the applicable limitations period expired in 1991, and (ii) the filing during that period of an action that was a legal nullity could not operate to toll the statute.

The defendants also contend that plaintiffs' counsel were negligent in pursuing the 1987 Loan claims, because they failed to ascertain the correct facts, *viz.,* that Mr. Kassoway was a shareholder of MAXXAM Group—not MCO—in 1987. Defendants argue that the Court should not reward counsels' negligence by permitting this thirteenth hour intervention, and that to do so in these circumstances would facilitate the improper circumvention of the contemporaneous ownership requirement of 8 *Del. C.* § 327, and would encourage

future plaintiffs who lack standing to file improper derivative actions with impunity.

Finally, the defendants argue that intervention must be denied in all events, on the ground that Mr. Lewis is not an adequate representative stockholder, because he is not the driving force behind this litigation, is not familiar with these proceedings, and is in poor health.

The plaintiffs vigorously contest these arguments, to which I now turn.

## III. DECISION

The predicate issue that this Court must first decide is Mr. Lewis' Rule 24 motion to intervene. That is because if leave to intervene is granted, the defendants' motion to dismiss the 1987 Loan transaction claims would be mooted, as there would exist a shareholder plaintiff with standing to prosecute those claims.

I conclude that intervention should be allowed, because (a) absent some positive rule of law precluding intervention, considerations of justice and practicality counsel that the 1987 Loan transaction claims be determined on their merits, and (b) there is no positive rule of law, flowing either from Court of Chancery Rule 24, 8 *Del. C.* § 327, or any decision by this or any other Delaware Court, which precludes the intervention plaintiffs seek here.

A. *Absent a Positive Legal Rule Requiring Dismissal, Considerations of Justice and Practicality Favor the Disposition of the Loan Claims on Their Merits.*

■ To appreciate fully what the defendants are asking this Court to do, some context is helpful. The defendants seek the dismissal, for reasons of standing, of claims that have now survived (i) one attempt to extinguish them by way of settlement, (ii) two separate motions to dismiss on the ground that, as pleaded, those claims were barred by the statute of limitations, and (iii) a lengthy, expensive trial on the merits. As noted earlier, the case is now *sub judice.*

Despite these claims' ability to survive this hazardous procedural journey, the defendants insist that this Court may not consider the claims on their merits, and must dismiss them on the threshold ground of lack of standing. Were the Court to adopt that approach, not only would an enormous expenditure of the parties' (and the Court's) resources have been totally wasted, but also the only beneficiaries of the dismissal would be the defendants, who are the fiduciaries that stand accused of wrongdoing. The public shareholders of MAXXAM, who would be the real beneficiaries of any corporate recovery, would not benefit.

These considerations impel the Court to conclude that, unless some positive rule of law mandates a dismissal no matter what the equities may be, it makes no sense, in terms of equity, justice or judicial economy, for the Court to do what the defendants ask. I so conclude, even though (i) Mr. Kassoway did not have standing when his counsel filed his lawsuit, and (ii) shareholder plaintiffs' counsel have provided no adequate excuse for their failure to discover that fact, or for allowing the incorrect allegations of Mr. Kassoway's stock ownership in MCO (MAXXAM) to be perpetuated in a series of complaints filed over the next five years. Those omissions are in no way condoned. However, from that it does not necessarily follow that MAXXAM or its innocent public stockholders must be deprived of MAXXAM's entitlement to prosecute its 1987 Loan transaction claims to a conclusion. None of MAXXAM's public stockholders (Mr. Lewis included and Mr. Kassoway excepted) had any reason to believe that Mr. Kassoway was not a contemporaneous owner of MAXXAM (MCO) shares, or that the corporation's claims were, for that reason, in potential jeopardy. On the contrary, at all relevant times MAXXAM's public stockholders had grounds to believe (and to rely on the belief) that these claims were being vigorously prosecuted, as indeed they were once the settlement was rejected. Moreover, after it was learned that Mr. Kassoway had no standing to bring the 1987 loan claims, plaintiffs' counsel acted promptly to locate a shareholder who did have standing, and to seek curative intervention.

For these reasons and in these particular circumstances, the 1987 Loan transaction claims will be dismissed only if the defendants can persuade the Court that that result is compelled by a positive rule of law, *viz.*, a statute, judicial decision or Court Rule. As discussed below, there is no such positive legal rule.

B. *No Positive Legal Rule Precludes Intervention or Requires The Dismissal of the 1987 Loan Claims.*

1. *The Intervention Motion Meets the Requirements of Rule 24.*

■ Chancery Court Rule 24(a) permits a person, upon timely application, to intervene as a matter of right where: (i) the applicant claims an interest relating to the property that is the subject of the action, (ii) the interest is not adequately represented by existing parties, and (iii) the applicant is so situated that the disposition of the action will impair the applicant's ability to protect his or her interest unless intervention is allowed. These requirements are satisfied here. It is undisputed that no existing party has standing to prosecute the claims arising out of the 1987 Loan transaction. Moreover, absent Mr. Lewis' intervention, those claims would have to be dismissed. In such circumstances, intervention is appropriate, particularly where the real party in interest (here, MAXXAM) has at all times been a party to the litigation. *See Michelson v. Duncan,* Del. Ch., C.A. No. 5052, Hartnett, V.C. (Apr. 1, 1980), Letter Op. at 4.

The defendants contend that intervention should be disallowed because Mr. Lewis is not an adequate representative stockholder. They argue that Mr. Lewis is unqualified to represent MAXXAM's interest because he was improperly solicited by plaintiffs' counsel and thus is not the driving force behind this litigation, he is unfamiliar with the litigation, and he is in poor physical condition. In addressing these arguments, the Court considers the following factors:

> [e]conomic antagonism between the representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; [and]

plaintiff's unfamiliarity with the litigation. . . .

*Scopas Technology Co., Inc. v. Lord,* Del. Ch., C.A. No. 7559, Walsh, V.C. (Nov. 20, 1984), Mem. Op. at 4–5, 1984 WL 8266. The defendants have the burden of demonstrating that Mr. Lewis would not be an adequate shareholder representative. *See Youngman v. Tahmoush,* Del. Ch., 457 A.2d 376, 381 (1983). They have not met that burden.

There is no evidence that Mr. Lewis was improperly solicited to join this proceeding after Mr. Kassoway was found to lack standing to prosecute the 1987 Loan transaction claims. Consistent with their duty to provide effective representation of the corporation's interests, counsel quite properly sought out a new shareholder representative where the existing representative was clearly disqualified. Mr. Lewis' deposition transcript demonstrates his comprehension of the nature of the claimed wrongdoing and the relief requested. Lewis Dep. at 16, 58. And finally, Mr. Lewis testified that even though he is 82 years old, he still practices law on a part-time basis, is familiar with his investments in various companies, and follows those companies' business and affairs. *Id.* at 4–5, 10–11, 19–20, 22–23.

In short, the defendants have failed to satisfy the Court that Mr. Lewis is an inappropriate plaintiff to represent MAXXAM's (and its minority shareholders') interests in this proceeding.

2. *No Statute Precludes Intervention in These Circumstances.*

■ The defendants argue that the contemporaneous ownership requirement of § 327 is a fundamental prerequisite for maintaining a derivative suit—so fundamental that if it is not satisfied, the suit is a legal nullity incapable of being brought to life by intervention. I disagree.

Section 327 states:

> In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he com-

plains or that his stock thereafter devolved upon him by operation of law.

8 *Del. C.* § 327 (1991). By its language, § 327 requires an averment of stock ownership in the complaint. The statute does not prescribe the consequence if the averment is found to be false. This Court has held, in other contexts, that § 327 must be liberally construed so as not to frustrate its primary purpose. *See Jones v. Taylor,* Del. Ch., 348 A.2d 188, 191 (1975). *See also Brambles USA, Inc. v. Blocker,* 731 F.Supp. 643, 649 (D.Del.1990). That purpose, as former Chancellor (and Chief Judge) Seitz has stated, is " 'to prevent what has been considered an evil, namely, the purchasing of shares in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock.' " *Blasband v. Rales,* 971 F.2d 1034, 1040 (3d Cir. 1992) (quoting *Rosenthal v. Burry Biscuit Corp.,* Del. Ch., 60 A.2d 106, 111 (1948)).

To permit Mr. Lewis to intervene would not frustrate that statutory purpose. Mr. Lewis has owned stock in MAXXAM (and in its predecessor, MCO) continuously since the time of the 1987 Loan transaction. He plainly did not "buy into" these lawsuits. Moreover, nothing in the text of or policy underlying § 327 precludes intervention as a matter of law. If anything, the opposite is the case. Before a derivative action is dismissed for lack of standing, notice is customarily given to shareholders, to afford them an opportunity to prosecute the claims on the corporation's behalf. In *Hutchison v. Bernhard,* Del. Ch., 220 A.2d 782 (1965), the plaintiff sold his stock, and therefore lost standing to maintain the action, after the action was commenced. The defendants moved to dismiss the suit. Then–Chancellor Seitz directed the corporation to notify the corporation's shareholders that a motion to dismiss had been filed, and to disclose the ground for that motion. The Court held that if a qualified stockholder moved to intervene, the Court would entertain the intervention motion before granting the defendants' motion to dismiss. *Id.* at 784. *See also Theodora Holding Corp. v. Henderson,* Del. Ch., 257 A.2d 398, 400 n. 1 (1969) (noting that if it became necessary to maintain the action, the Court

would entertain a motion to join a plaintiff who had continuously owned stock and, thus, had standing to assert the claim).

Nor is there Delaware case law that precludes intervention here, and the weight of persuasive authority in other jurisdictions favors intervention as a method of curing a standing deficiency in a stockholder's derivative action.

■ A derivative claim belongs to the corporation, not to the shareholder plaintiff who brings the action. *Taormina v. Taormina Corp.,* Del. Ch., 78 A.2d 473, 475 (1951). The shareholder plaintiff's interest is limited to compelling the corporation (by "standing in its shoes") to assert the corporation's right to seek redress for the alleged wrongdoing. *Id.; Cantor v. Sachs,* Del. Ch., 162 A. 73, 76 (1932). The stockholder plaintiff's claim for redress in a derivative action is not personal. It is derivative, and exists solely because of the plaintiff's interest as a shareholder. *Eshleman v. Keenan,* Del. Ch., 194 A. 40, 43 (1937), *aff'd,* Del.Supr., 2 A.2d 904 (1938). Because the corporation is always the real party in interest, the identity of the specific representative shareholder plaintiff is not a paramount concern. Thus (and to reiterate) in derivative actions where the original plaintiff never had proper standing or lost standing after the action was filed, courts have permitted intervention as a means to cure the standing defect. *See, e.g., Hutchison v. Bernhard,* Del. Ch., 220 A.2d 782 (1965); *Truncale v. Universal Pictures Co.,* 76 F.Supp. 465 (S.D.N.Y.1948); *Pikor v. Cinerama Productions Corp.,* 25 F.R.D. 92 (S.D.N.Y.1960).

In *Truncale, supra,* a shareholder moved to intervene in a derivative suit in which the original shareholder plaintiff lacked standing from the outset. Judge Simon Rifkind, confronted with the defense that a shareholder cannot intervene in a "non-suit," rejected that position out of hand:

An application has been made ... for leave to intervene. Defendants oppose the application. They assert that since plaintiff Truncale is not entitled to institute this action, there is in fact no action pending in which intervention may be granted.

The history and purpose of the Federal Rules are antagonistic to any such technical limitation upon a course of action obviously designed to save time and money. A denial of [the intervenor's] application and a dismissal of [the] complaint would not prejudice the institution of a new suit by [the intervenor]. I see no reason for encouraging the delay and duplication a denial of the application would entail.

76 F.Supp. at 471.

The reasoning in *Truncale* was followed in *Pikor*, where a shareholder of a New York corporation was permitted to intervene in a derivative action that the original plaintiffs lacked the capacity to bring. The court in *Pikor* held that because the claim belonged to the corporation, a specific shareholder plaintiff's standing deficiency could not extinguish the cause of action being asserted on the corporation's behalf. The court stated:

'The extinction of the status of [the] plaintiffs ... in no way impaired or affected the corporation's cause of action or its right to continue and prosecute the action. In legal effect, it is as if the [original plaintiffs] had never appeared or instituted the action but as if the corporation alone was the plaintiff and alone had brought the suit.'

*Pikor*, 25 F.R.D. at 95 (quoting *Kantor v. Stendig*, 190 Misc. 861, 76 N.Y.S.2d 284, 286 (Sup.Ct. Special Term N.Y.Co.1947)).[6]

The rationale of *Pikor* and *Truncale* is consistent with Delaware's concept of a derivative action, as evidenced by *Michelson v. Duncan*, Del. Ch., C.A. No. 5052, Hartnett, V.C. (April 1, 1980), Mem. Op. at 2. In *Michelson*, Vice Chancellor (now Justice) Hartnett permitted a shareholder to intervene in a derivative action where the original plaintiff lacked standing to prosecute the claims. The Court granted the intervenor's Rule 24(a) motion as a matter of right, finding that no existing party to the litigation could protect the intervenor's interests. At a minimum, *Pikor* and *Truncale* and their progeny, together with *Michelson*, fatally undercut the defendants' position that intervention is precluded as a matter of law.

The defendants rely primarily upon *McClune v. Shamah*, 593 F.2d 482 (3d Cir. 1979), as support for their argument. There, limited partners sued the promoters of a limited partnership, as well as certain parties who had entered into a joint venture with the partnership. The defendants moved to dismiss one count of the complaint on the basis that the claim belonged to the limited partnership, and not the limited partners. In response, the limited partnership moved to intervene to assert, *inter alia*, the claim that was the subject of the dismissal motion. The Third Circuit affirmed the denial of the intervention motion, holding that "intervention will not be permitted to breathe life into a 'nonexistent' lawsuit," and that a motion to intervene "is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate." *McClune*, 593 F.2d at 486.

*McClune* was not a derivative action, it was not decided under Delaware law, and the equities there were far different from those presented here. In *McClune*, no prejudice resulted from the denial of intervention, because (as the court there pointed out), the limited partnership was free to bring its claim in a separate lawsuit, and those claims would not be time-barred. Here, absent intervention the claims—which were brought for the benefit of the corporation and its minority shareholders—would be time barred. Thus, in this case, unlike *McClune*, the equities weigh heavily on the side of intervention.

In my view, that distinction is critical because I do not read *McClune* as establishing any "bright line" rule or doctrine that prohibits curative intervention where a plaintiff initially lacks standing to assert the derivative claim. I read *McClune* far more narrowly, as holding that leave to intervene may be denied as a matter of discretion, where the

---

6. The rationale of *Pikor* and *Truncale* has been followed in other jurisdictions and in a variety of circumstances. *See, e.g., Mullins v. DeSoto Securities Co.*, 3 F.R.D. 432 (W.D.La.1944); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 57 (S.D.N.Y.1993); *Cohen v. Bloch*, 78 Civ. 3909 (RWS), *slip op.* (S.D.N.Y. Apr. 14, 1981); *Brown v. Board of Ed. of Topeka, Shawnee County*, 84 F.R.D. 383, 393 (D.Kan.1979).

aim of the proposed intervention is to cure a standing problem that can more readily be cured by other means. The discretionary denial of intervention made sense in *McClune.* It would not make sense here.

### 3. *The Claim in Intervention is Not Time–Barred, Because the Intervention Relates Back to the Original Complaint.*

█ Finally, Mr. Lewis's intervention motion is not barred by the statute of limitations as defendants assert. Because the 1987 Loan claims would relate back to the original filing of the lawsuit, that obviates any limitations defense being asserted, at least as a matter of pleading.[7]

In analogous cases, Delaware courts have found that the claims of an intervenor relate back to the original filing and defeat any limitations defense. In *Child, Inc. v. Rodgers,* Del.Super., 377 A.2d 374, 377 (1977), *aff'd sub nom in relevant part, Pioneer Nat. Title Ins. Co. v. Child. Inc.,* Del.Supr., 401 A.2d 68, 72 (1979), a non-profit corporation brought a legal malpractice claim. The corporation's sole shareholders later concluded that they, rather than the corporation, possessed the cause of action, and sought to amend the complaint after the applicable statute of limitations had expired. The Court allowed the amendment, holding that the statute of limitations did not bar prosecution because the claims "related back" to the filing of the original complaint:

And 'As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense.'

*Child, Inc.,* 377 A.2d at 377 (quoting Wright and Miller, 6 *Federal Practice and Procedure* § 1501 (1971)).

The "relation back" doctrine has been applied to claims asserted by way of intervention under Rule 24. *See also Poppitt v. Liberty Mutual Ins. Co.,* Del.Super., C.A. Nos. 84C–NO–42, 85C–JN–113 (Consolidated), Hermann, C.J. (Retired) (May 5, 1987), at 3, 1987 WL 11443 (applying the reasoning of *Child, Inc. v. Rodgers* to Rule 24 Motions); *Straughn v. Adkins,* Del.Super., C.A. No. 87C–AU16, Lee, J. (July 12, 1991), at 5, 1991 WL 138422; *Burris Foods Inc. v. Deloitte & Touche,* Del.Super., C.A. No. 89C–DE28, Graves, J. (Sept. 26, 1991), at 5, 1991 WL 215896.

Here the defendants have been on notice of the claims asserted against them since 1991, and the real party in interest (MAXX-AM) has been a party to these actions from the very beginning. At all relevant times the MAXXAM public shareholders (including Mr. Lewis) had assurance that those claims were being prosecuted, and not until the standing issue surfaced post-trial did Mr. Lewis or any other stockholder have cause to intervene to protect MAXXAM's interests.[8] Having now litigated these claims on the merits at trial, the defendants cannot validly claim prejudice by the intervention of an additional plaintiff at this procedural juncture. Accordingly, the statute of limitations will not bar Mr. Lewis' intervention to prosecute MAXXAM's 1987 Loan transaction claims.

---

7. Nothing stated herein should be read as expressing a view concerning the merits of the defendants' limitations defense that was litigated at trial. That defense remains *sub judice.*

8. That distinction renders inapposite the defendants' reliance on *In re Elscint Ltd. Sec. Litig.,* 674 F.Supp. 374 (D.Mass.1987). In that case the class had not yet been certified, and the individual class members had no basis to suppose that their interests were being protected. Therefore, the Court held that the statute of limitations was not tolled with respect to their claims. *Id.* at 382. *See also Fleming v. Bank of Boston,* 127 F.R.D. 30 (D.Mass.1989), *aff'd,* 922 F.2d 20 (1st

Cir.1990); *In re Colonial Ltd. Partnership Litigation,* 854 F.Supp. 64 (D.Conn.1994). *Compare, American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) (In general, filing of class action tolls statute of limitations for class members); *Rose v. Arkansas Valley Environ. & Utility Auth.,* 562 F.Supp., 1180, 1193 (W.D.Mo.1983) (initial class certification that gave unnamed class members assurance that their interests were being protected was sufficient to toll statute of limitations); *Haas v. Pittsburgh Nat'l Bank,* 526 F.2d 1083 (3d Cir.1975) (same).

### III. *CONCLUSION*

For the foregoing reasons, Mr. Lewis' Rule 24 motion to intervene is granted, and the defendants' Rule 41 motion to dismiss the 1987 Loans transaction claims is denied. IT IS SO ORDERED.