FIFTH DIVISION

March 30, 2001

No. 1-99-1387

JOSEPH BUTERA and PAUL BUTERA, )       Appeal from

)    the Circuit Court

Plaintiffs-Appellants, )     of Cook County.

)

v. )     No. 98-CH-6000

)

ATTORNEYS' TITLE GUARANTY FUND, INC., )        Honorable

)      Albert Green,

Defendant-Appellee. )     Judge Presiding.

JUSTICE THEIS delivered the opinion of the court:

Joseph Butera and Paul Butera (the Buteras) filed an action for declaratory judgment, seeking a binding declaration that the Buteras were "insureds" under the title insurance policy issued by the Attorneys' Title Guaranty Fund, Inc. (ATG), and to hold ATG liable for the back property taxes on the property at issue.  On cross-motions for summary judgment, the circuit court granted judgment in favor of ATG.  

On appeal, the Buteras raise two issues: (1) whether the Buteras, as beneficiaries of a land trust that is covered by an owner title insurance policy naming the trustee of the trust as the insured, are also insured under the language of the policy after conveying the property to a corporation for no consideration and then again conveying the property to the corporation's sole shareholders, the beneficiaries individually, for no consideration; and (2) whether the beneficiaries under a land trust "retain an estate or interest in land" for continued policy coverage after the two conveyances of the property.  After careful review, we affirm.

On March 11, 1968, Joseph Butera, Paul Butera and Giovanni Butera executed a trust agreement with the Chicago Title and Trust Company, trust No. 51843 (Trust), in connection with the ownership of certain real estate.  Pursuant to the trust agreement, Joseph, Paul and Giovanni Butera were the beneficiaries under the Trust.  Giovanni Butera assigned his interest to Paul and Joseph Butera on February 1, 1974, and is now deceased.  On July 1, 1986, pursuant to a trustee's deed, the Trust became the legal titleholder of property commonly known as 4716 North Nagle Avenue, Harwood Heights, Illinois (Harwood Heights property).  On July 11, 1986, ATG issued an owner title insurance policy, policy No. 2029762 (the Policy), covering the property at issue in Harwood Heights in the amount of $937,500.  The policy named the trustee of the Trust, "Chicago Title and Trust Co.," as the insured. 

On December 23, 1993, the trustee conveyed the property in Harwood Heights by trustee's deed to Joe and Paul, Inc.  On November 30, 1995, Joe and Paul, Inc., conveyed by warranty deed the Harwood Heights property to the Buteras.  According to Paul Butera's affidavit, Paul and Joseph Butera were the only shareholders of Joe and Paul, Inc.  Joe and Paul, Inc., dissolved after that conveyance on January 2, 1996.  Each of these conveyances stated that it was accompanied by consideration in the amount of $10 and "other good and valuable considerations." 

On November 21, 1997, First American Title Insurance Company informed the Buteras that there was a lien on the Harwood Heights property from 1978 in the amount of $14,378 plus penalties.  In the policy, ATG only listed as an exception the lien of taxes for the year 1985 and thereafter.  ATG did not except any unpaid real estate taxes prior to 1985 on the Harwood Heights property.  The Buteras contend that ATG is liable for these unpaid real estate taxes.

Summary judgment is appropriate when all of the pleadings, depositions, admissions and affidavits demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   735 ILCS 5/2-1005(c) (West 1998); 
Wagemann Oil Co. v. Marathon Oil Co.
, 306 Ill. App. 3d 562, 566-67, 714 N.E.2d 107, 110 (1999).  The appropriate standard of review of a granting of summary judgment is 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).  Additionally, the construction of an insurance policy is a question of law subject to 
de novo
 review.  
State Farm Mutual Automobile Insurance Co. v. Villicana
, 181 Ill. 2d 436, 441, 692 N.E.2d 1196, 1199 (1998).

At issue here is the interpretation of the title insurance policy terms.  The Policy contains the following definition of "insured":

"(a) 'insured': the insured named in Schedule A, and, subject to any rights or defenses The Fund may have had against the named insured, those who succeed to the interest of such insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors." 

The insured named in schedule A is "Chicago Title and Trust Co.," the trustee.  None of these terms are defined within the Policy.  

Title insurance policies are subject to the same rules of construction as other insurance policies.  9 J. Appleman & J. Appleman, Insurance Law & Practice §5201 (1981).  The language in a title policy is construed in accordance with the common understanding of the words used, and because a title policy is drawn by the insurer, ambiguities and uncertainties in the policy are construed in favor of the insured.  9 J. Appleman & J. Appleman, Insurance Law & Practice §5201 (1981).  Where the words in an insurance policy are clear and unambiguous, courts should give effect to the plain and obvious meaning of those words.  
Dinges v. Lawyers Title Insurance Corp.
, 106 Ill. App. 3d 188, 190, 435 N.E.2d 944, 946 (1982).  However, "[a]s with any insurance policy, courts are not to distort the language of the title policy to create ambiguities in order to rewrite the policy."  
Oak Park Trust & Savings Bank v. Intercounty Title Co.
, 287 Ill. App. 3d 647, 651, 678 N.E.2d 723, 725 (1997).  

The Buteras first contend they are "insureds" under the Policy because they succeeded to interest in the property by transfers that were "by operation of law."  According to their interpretation of the policy language, the plain and ordinary meaning of "purchase" denotes a transfer only for valuable consideration and, therefore, "by operation of law" means every method of acquiring property that is not for valuable consideration.  Because the Buteras transferred the property twice, each time without consideration, they argue that these transfers were by operation of law.  ATG contends the term "purchase" has a more technical definition in real estate law, which is the intended definition here.  ATG argues that "purchase" in real estate law covers any acquisition of title by the voluntary act of the parties.

Black's Law Dictionary 
provides two definitions for "purchase": (1) "[t]he act or an instance of buying" (A purchaser is one who obtains property for money or other consideration) and (2) "[t]he acquisition of real property by one's own or another's act (as by will or gift) rather than by descent or inheritance."  Black's Law Dictionary 1248 (7th ed. 1999).  Because "purchase" is able to be defined in at least two different, reasonable ways, we find the term to be ambiguous.  
Insurance Co. v. Brown
, 315 Ill. App. 3d 1168, 1173, 734 N.E.2d 964, 968 (2000).  Therefore, to interpret the phrase "by operation of law as distinguished from purchase," we must place the words in context to discern
 the meaning of the entire policy provision
.
  
Douglas v. Allied American Insurance
, 312 Ill. App. 3d 535, 539, 727 N.E.2d 376, 380 (2000).  When interpreting the policy language, the court must construe an insurance policy as a whole, giving words their plain, ordinary and popular meaning, at the same time striving to fulfill the intent of the parties.  
Outboard Marine
, 154 Ill. 2d at 108, 607 N.E.2d at 1212.   

The Buteras also claim to be "distributees" and, therefore, insureds under the Policy.  They argue that the term "distributee" is very broad and may encompass the recipient of property from a trust.  While the Policy uses the term generally, a distribution from a trust does have a specific meaning.  Black's Law Dictionary defines a trust distribution as "[t]he cash or other property paid or credited to a trust beneficiary."  Black's Law Dictionary 488 (7th ed. 1999).  Here the first transfer was a distribution not to the beneficiaries of the trust but, rather, to a separate entity, Joe and Paul, Inc.  The Buteras do not cite any case or statute to support their claim that the trustee distributed the property to the corporation as a distribution by operation of any law.    

As to the second transfer, the Buteras rely on the Illinois Business Corporation Act, which states that the assets of a dissolved corporation are "distributed" among its shareholders.  805 ILCS 5/12.30 (West 1998).  They contend they were "distributees" when they received the property as sole shareholders upon the dissolution of Joe and Paul, Inc., and, therefore, they are insureds under the Policy.  The policy language at issue was analyzed in the context of a dissolved corporation in 
Historic Smithville Development Co. v. Chelsea Title & Guaranty Co.
, 184 N.J. Super. 282, 284, 445 A.2d 1174, 1175 (1981) 
aff'd in part & rev'd on other grounds
, 190 N.J. Super. 567, 464 A.2d 1177 (1983).
  Historic Smithville Inns, Inc. (Inns), owned land in New Jersey and obtained a title insurance policy from Chelsea Title & Guaranty Co.  
Soon thereafter, The Development Company purchased all of Inns' stock and dissolved Inns.  
Historic Smithville
, 184 N.J. Super. at 286, 445 A.2d at 1176.  It then transferred all of Inns' assets, including title to the property at issue, to itself.   
Historic Smithville
, 184 N.J. Super. at 286, 445 A.2d at 1176.   Chelsea then took the position that The Development Company was not an insured under the title insurance policy, the language of which is identical to the ATG policy in this case.  
Historic Smithville
, 184 N.J. Super. at 287, 445 A.2d at 1176.  

The New Jersey superior court 
found the terms "successor" and "distributee" to be ambiguous and held that "if a corporation, in dissolution or otherwise, transfers all of its assets to some other entity or to an individual, the transferee is a 'successor' in every sense of the word."  
Historic Smithville
, 184 N.J. Super. at 291, 445 A.2d at 1179.  The court found The Development Company to be an "insured" under the policy as both a distributee and a corporate successor.  
Historic Smithville
, 184 N.J. Super. at 296, 445 A.2d at 1180.

   
Historic Smithville
 concerned only one transaction--one conveyance from a corporation upon the sale of all of its assets to its new successor corporation.  We agree, and ATG concedes, that the 
Historic Smithville
 analysis would resolve this case if the only conveyance was from Joe and Paul, Inc., to the Buteras individually.  However, there were two conveyances in the present case.  The first conveyance from the Trust to Joe and Paul, Inc., was not a distribution as that term is used in 
Historic Smithville
. 

The policy language at issue was also interpreted in 
Pioneer National Title Insurance Co. v. Child, Inc.
, 401 A.2d 68 (Del. 1979).  In 
Child
, Henry du Pont and his wife financed the purchase of property in the name of Child Foundation.  
Child Foundation was the named insured under the title policy secured when the property was obtained.  
Child, Inc.
, 401 A.2d at 70.  The attorney handling the transaction had failed to qualify Child Foundation as a tax-exempt corporation under the governing tax laws; thus, the du Ponts' gift would not qualify for a charitable deduction.  Child Foundation then deeded the property back to the du Ponts, who then deeded the property to a new corporation, Child, Inc., that did qualify for a tax deduction.  
Child, Inc.
, 401 A.2d at 71.  The Delaware Supreme Court held the succession to the named insured's interest was other than "by operation of law" as required for continued coverage under the terms of the policy.  
Child, Inc.
, 401 A.2d at 71.

At oral argument, ATG attempted to reconcile these cases with the various terms within the policy language in question.  ATG contends successors "by operation of law" under the Policy are those who acquire enforceable property rights without the necessity of conveyance of a deed, as distinct from those who purchase property where paper title changes hands.  In each of the examples provided in the Policy, the individuals or entities have relationships to the named insured that preexisted the exchange of title.  The "heirs," "devisees," "corporate successors," etc., are successors of the named insured because they take the property 
not 
from
 the insured, but
 through
 the named insured by operation of law.   

We agree that this interpretation of the policy language gives meaning to all the terms in the provision and fulfills the intent of the parties. It is also consistent with the results reached by the 
Historic Smithville
 and 
Child
 courts.  In 
Child
, the property was deeded by the named insured Child Foundation to the du Ponts, who then deeded it to another entity, Child, Inc.  Applying our interpretation, it becomes clear that Child, Inc., was a stranger to the property, having no preexisting relationship to either the Child Foundation or the du Ponts.  On the other hand, the property in 
Historic Smithville
 was transferred to the shareholders and through the named insured corporation based on their relationship to the corporation.            This interpretation also correlates with public policy.  Title insurance is an unusual type of insurance.  It is not a recurring policy:  there is a single premium, and the policy remains outstanding forever to protect the property owner.  Black's Law Dictionary 808 (7th ed. 1999).  In its definition of "insured," ATG's title insurance policy anticipated changes in the title owner of the insured property, and, thus, changes in the named insured.  The Policy, however, placed limits on who could obtain the property and still remain insured under the Policy.  Our interpretation of successors "by operation of law" restricts the definition of "insured" to certain foreseeable groups of individuals.  Transfers by purchase, on the other hand, would expose the insurer to significantly greater risk because the number of possible transferees is limitless.  

We find Joe and Paul, Inc., was not a successor to the interest of the Trust by operation of law.  The corporation was a stranger to the property with no preexisting relationship to the Trust when the named insured trustee deeded the property to it.  While the Buteras received the property as shareholders of a dissolved corporation, the corporation was not a named insured under the Policy and, therefore, the Buteras were not named insureds.   

 The Buteras also argue that they qualify as "insureds" under the Policy due to the "Continuation of Insurance after Conveyance of Title" section.  That paragraph states that "coverage of this policy shall continue in force as of Effective Date of policy in favor of an insured so long as such insured retains an estate or interest in the land."  The Buteras argue that, as beneficiaries of a land trust, they are the true "owners" of the property and clearly retained an interest in the land.  

Because the Trust relinquished its interest in the real estate when the trustee deeded the property to Joe and Paul, Inc., we need not reach the question whether the Buteras possessed an estate or interest in the property as beneficiaries of the Trust.  In this first conveyance, the named insured did not retain an interest in the property.  Additionally, as shareholders of the corporation, the Buteras' interest was limited to a share of the profits and the losses of the company and the right to receive a proportionate share of the dividends and assets upon dissolution.  In Illinois, the interest of a shareholder in a corporation is deemed to be one in personal property.  
Sawko v. Dominion Plaza One Condominium Ass'n No. 1-A
, 218 Ill. App. 3d 521, 531, 578 N.E.2d 621, 627-28 (1991).  We find coverage under the Policy was not continued to the Buteras after the title was conveyed. 

We hold that the circuit court did not err in granting summary judgment in favor of ATG.  For the reasons stated, we affirm.

Affirmed.

QUINN, P.J., and *REID, J., concur.

*Due to Justice Zwick's retirement, his successor, Justice Reid, participated in the disposition of this case.  Justice Reid has reviewed the parties' briefs and a tape recording of the oral argument.