THIRD DIVISION
February 22, 2006

Nos. 1-05-1007 and 1-05-1030 (Consolidated)

| | | |
|---|---|---|
| NANCIE PARIS-CUSTARDO, Special Administrator of the Estate of KATHRYN CUSTARDO, Deceased, as Assignee of Action Bag Company, Inc., a corporation, Nancy Cwynar and Richard Cygan, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | ) ) ) | No.   02 CH 14873 |
| Defendant-Appellee | ) ) ) | |
| (Country Mutual Insurance Company, | ) ) | Honorable David R. Donnersberger, |
| Intervening Plaintiff-Appellant). | ) | Judge Presiding. |

JUSTICE KARNEZIS delivered the opinion of the court:

This consolidated appeal arises from an order of the circuit court granting summary judgment to defendant Great American Insurance Company of New York (Great American) in the declaratory judgment actions filed by plaintiff Nancie Paris-Custardo and intervening plaintiff Country Mutual Insurance Company (collectively plaintiffs) seeking declarations of insurance coverage under an insurance policy issued

by Great American. Plaintiffs argue that the court improperly interpreted an endorsement in the insurance policy and, as a result, erred in granting summary judgment to defendant, denying summary judgment to plaintiffs and denying plaintiffs' motions to reconsider on the basis that Great American did not owe coverage under the policy. Country Mutual also argues that the court erred in declining to go to trial on Country Mutual's breach of contract claim. We affirm.

Background

On September 3, 1999, Richard Cygan, driving a borrowed automobile, was involved in an accident. His passenger, Kathryn Custardo, died from injuries she sustained in the accident. In October 1999, Custardo's mother, plaintiff Paris-Custardo, as special administrator of Custardo's estate, filed suit in the circuit court of Cook County against Cygan's mother, Nancy Cwynar, as parent and next friend of Cygan.

Cwynar was president of Action Bag Company, Inc. (Action Bag). Great American had issued a commercial umbrella liability insurance policy to Action Bag for the period from October 1, 1998, to October 1, 1999. The policy contained an endorsement titled: "AUTO LIABILITY - FOLLOWING FORM." The endorsement provided:

"The following exclusion is added to Section IV - EXCLUSIONS:

Any liability arising out of ownership, maintenance, operation, use, 'loading' or 'unloading' of any 'auto,' except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader

2

coverage than is provided by such policy.

This endorsement does not change any other provision of the policy."
The liability limit under the Great American policy is $4 million.

The schedule of underlying insurance in the Great American policy lists a business automobile liability policy issued to Action Bag by Great Northern Insurance Company, a member of the Chubb insurance companies (Chubb).  Under the Chubb policy, both Cygan and Cwynar are named insureds under the policy's "Drive Other Car Coverage Broadened Coverage for Named Individuals" endorsement.  The policy provides $1 million coverage for each occurrence.

Country Mutual had issued a personal umbrella liability insurance policy to Cwynar and Frederick Cwynar for the period from February 4, 1999, to February 1, 2000.  The policy has a liability limit of $1 million.  Cygan is covered under the policy as a relative of Cwynar residing in her home at the time of the accident.

In 2001, Paris-Custardo made a demand on Country Mutual and Great American to settle the lawsuit.

In June 2002, Great American's claims handler, James Danehy, sent an e-mail to Country Mutual agreeing to a "pro-rata sharing" with Country Mutual of any settlement offer in excess of $1 million.  In July 2002, Great American denied it owed coverage. Paris-Custardo subsequently withdrew her settlement demand.[1]

---

[1]  There is no copy of this communication in the record but the parties appear to

1-05-1007 and 1-05-1030

On September 24, 2003, the court entered an order approving settlement of the suit by Chubb, Country Mutual and American Family Insurance, the insurer which provided personal automobile coverage for the automobile driven by Cygan. Each insurer paid its respective liability limits of $1 million, $1 million and $100,000. Country Mutual reserved its rights against Great American for its pro-rata share of the $1 million settlement paid by Country Mutual. Paris-Custardo took an assignment of Action Bag and Cwynar's claims against Great American for an additional $1 million.

In August 2002, Paris-Custardo, as assignee of Action Bag and Cwynar's rights against Great American, filed a declaratory judgment and breach of contract action against Great American, seeking a declaration that Great American owed coverage under its policy and for damages for Great American's denial of coverage. The court granted Country Mutual leave to intervene in the suit. Country Mutual filed a complaint seeking a declaration that Great American owed coverage and for damages for Great American's breach of the agreement to share the settlement costs.

In August 2004, Country Mutual, joined by Paris-Custardo, filed a motion for summary judgment on the coverage count. Great American filed a response and cross motion for summary judgment. On November 22, 2004, the court granted Great American's motion for summary judgment and denied plaintiffs' motion for summary judgment. On February 28, 2005, the court denied plaintiffs' motions to reconsider. On March 25, 2005, the court denied Country Mutual's motion to set a litigation schedule for its breach of contract count. The court's order explained that the court had granted

summary judgment to Great American on Country Mutual's entire complaint because once the court determined that there was no coverage under the Great American policy, nothing in the case remained to be decided. Both Paris-Custardo and Country Mutual timely filed a notice of appeal on March 25, 2005. Since they concern similar facts and issues, we have consolidated the appeals. We review a grant of summary judgment *de novo.* *Axen v. Ockerlund Construction Co.*, 281 Ill. App. 3d 224, 229, 666 N.E.2d 693 (1996).

Analysis

At issue here is whether the Great American policy provides coverage for Cygan's liability for damages arising out of the auto accident. There is no dispute that, reading the policy without the "auto liability - following form" endorsement, Cygan is not an insured thereunder. Plaintiffs argue, however, that the endorsement operates to provide coverage for Cygan's liability.

The construction of an insurance policy is a question of law, which we review *de novo.* *Domin v. Shelby Insurance Co.*, 326 Ill. App. 3d 688, 692, 761 N.E.2d 746, 750 (2001). A court must determine the intent of the parties when construing a policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992). "To determine 'the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract [citations].' " *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*,

6

166 Ill. 2d 520, 529, 655 N.E.2d 842, 846 (1995), quoting *Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212. Provisions that exclude or limit coverage are interpreted liberally in favor of the insured and against the insurer. *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 642, 707 N.E.2d 1259, 1262 (1999). If the words found in the policy are clear and unambiguous, the court must give them their "plain, ordinary, and popular meaning." (Emphasis omitted.) *Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212.

Conversely, if the words in the policy are susceptible to more than one reasonable interpretation, they must be considered ambiguous and construed strictly against the insurer who drafted the policy and in favor of the insured. *Outboard Marine Corp.*, 154 Ill. 2d at 108, 607 N.E.2d at 1212. A contract is not rendered ambiguous merely because the parties disagree on its meaning, nor is it unambiguous because each party insists that the language unambiguously supports its position. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153-54, 821 N.E.2d 206, 214 (2004). Rather, whether a contract is ambiguous is a question of law, which we review *de novo*. *Central Illinois Light*, 213 Ill. 2d at 153-54, 821 N.E.2d at 213-14. Courts are not to distort the language of the policy to create ambiguities in order to rewrite the policy. *Butera v. Attorneys' Title Guaranty Fund, Inc.*, 321 Ill. App. 3d 601, 604, 747 N.E.2d 949, 952 (2001).

The auto liability endorsement provides that the auto liability exclusion "is added to Section IV - EXCLUSIONS." Since we must construe the policy as a whole, the

endorsement must be read in conjunction with the specific language of the exclusions section, which prefaces its provisions with the phrase "[t]his insurance does not apply to: * * *." Accordingly, read as a whole, the policy now provides:

"This insurance does not apply to:

* * *

Any liability arising out of ownership, maintenance, operation, use, 'loading' or 'unloading' of any 'auto,' except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy."

The Chubb policy is listed in the schedule of underlying insurance. Damages arising out of Cygan's automobile accident were covered under the Chubb policy. Cygan was a named insured under the Chubb policy and the policy provided coverage for any car he was driving.[2] Plaintiffs argue that the Great American policy, following form with the Chubb policy pursuant to the auto liability endorsement, therefore also

---

[2] Great American argued in the alternative below that there was a question of fact regarding whether Cygan was covered under the Chubb policy, positing that Cygan was added as an insured to the Chubb policy after the accident. However, the issue of coverage under the Chubb policy is not before us given that there is no question that, as will be discussed, Cygan is not an insured under the Great American policy, no matter what coverage the Chubb policy may provide for him.

provides coverage for Cygan's liability arising out of the accident.

Plaintiffs state that there is no other auto liability exclusion in the Great American policy. This is not quite true. Paragraph F of the policy's section V, the definitions section, defines "named insured" as, among other things:

> "6.     Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.
>
> However, the coverage granted by this Provision 6. does not apply to the ownership, maintenance use, 'loading' or 'unloading' of any 'autos,' aircraft or watercraft unless *such* coverage is included in the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies." (Emphasis added.)

Although not stated in the exclusions section of the policy, it is apparent this definition provides a similar auto liability coverage exclusion and exception to the exclusion as the endorsement. Use of the word "such" in the phrase "such coverage" operates to refer back to the immediately preceding referenced coverage, *i.e.*, to the coverage granted by provision 6. Similarly, "such underlying policies" refers back to the immediately preceding referenced underlying policies, to "the policies listed in the Schedule of Underlying Insurance."

The word "such" in the auto liability endorsement operates in the same manner. Reading the endorsement in context, the policy language is clear: "[t]his insurance," *i.e.*, the insurance provided in the policy, does not apply to any liability arising out of the

9

operation of an auto "except to the extent that *such insurance* is provided by a policy listed in the Schedule of Underlying Insurance." (Emphasis added.) "*Such insurance*" refers back to the immediately preceding referenced insurance, to the original insurance provided by the policy prior to the exception stated in the endorsement. The emphasized language makes it clear that the endorsement operates to exclude insurance originally not exempted, in this case for an insured's liability arising from operation of an auto, and then, if "*such insurance,*" *i.e.*, the original insurance, is provided for in an underlying policy, to put "*such insurance,*" that *same* original insurance, back. In other words, the only insurance excepted from the exclusion is *insurance provided in the policy prior to the exclusion* that is *also* provided for in an underlying policy. In no way can the auto liability endorsement be read as adding insurance coverage to the policy where there was none previously, as adding an insured to the policy who was not originally covered by the policy.

As used in the endorsement phrase "such insurance," "such" refers back to the immediately preceding referenced insurance, the insurance granted by the policy prior to the exclusion, an insurance under which Cygan is not an insured. The phrase does not, as plaintiffs' interpretation of the endorsement suggests, refer to insurance under the Chubb policy, insurance which would include coverage for Cygan. The intent of the parties, as clearly shown by the policy language, was to provide coverage for liability incurred by Action Bag and/or its employees acting within the scope of their employment and for affiliates acting on behalf of Action Bag. Nothing in the policy

requires reading the endorsement to conflict with that intent, a conflict occasioned by the adding of coverage for someone whose only connection with Action Bag is his filial relationship to Action Bag's president.

Further, the endorsement states that it "does not change any other provision of the policy." This may be "boilerplate" language as plaintiffs suggest, but that does not make it ineffectual. Reading the endorsement to provide coverage for Cygan would essentially result in Cygan becoming an insured under the Great American policy for purposes of an auto liability coverage. This is clearly a change in the policy. In fact, it is a change to an entire section of the policy, the definitions section, under which Cygan, who was not an employee or a named insured or a person acting on behalf of Action Bag at the time of the accident, does not meet any of the requirements for an insured.

The fact that the endorsement is named a "following form" endorsement does not make the entire policy a following form policy. Only the auto liability coverage provided for in the endorsement follows form with an underlying policy. Accordingly, the endorsement creates auto liability coverage in accordance with the terms and provisions of the Chubb policy. But, as discussed previously, that coverage is only available for insureds under the Great American policy who are also insureds under the Chubb policy, not for those, like Cygan, who are not insureds under the Great American policy.

" 'An indorsement is not to be construed more broadly than the fair import of its terms considered in connection with the whole of the policy.' " *Fidelity & Casualty Co. of*

11

*New York v. Mobay Chemical Corp.*, 252 Ill. App. 3d 992, 1002, 625 N.E.2d 151, 158 (1992), quoting 2 Couch on Insurance, §15:30, at 230 (2d rev.ed. 1983).  Reading the endorsement and the policy together, it is clear that there is no conflict or ambiguity between the two.  In fact, given that the policy's definition of "named insured" includes an auto liability exclusion similar to that of the endorsement, the endorsement serves to reinforce that definition, not conflict with it.

"It is well settled that an insured is only entitled to indemnity for losses that fall within the terms of its policy."  *Fidelity & Casualty Co. of New York*, 252 Ill. App. 3d at 1003, 625 N.E.2d at 159.  Cwynar and Action Bag are insureds under the Great American policy but the liability at issue is a loss not covered under the policy because Cwynar was not driving the auto, Cygan was.  Because the endorsement does not operate to provide coverage for Cygan or make him an insured under the Great American policy, there is no coverage under the policy for any liability resulting from his accident.  *Transcontinental Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh*, 278 Ill. App. 3d 357, 368, 662 N.E.2d 500, 507 (1996).  The trial court was correct in finding that the Great American policy did not provide coverage for Cygan and in granting summary judgment to Great American.

Country Mutual also argues that the court erred in granting summary judgment to Great American on Country Mutual's breach of contract count against Great American for its alleged breach of an agreement to share pro-rata the cost of Country Mutual's $1 million settlement payment.  Given our determination that the Great American policy

provides no coverage for Cygan, Great American cannot be liable for a pro-rata share of Country Mutual's $1 million settlement payment and we need not address this issue. Accordingly, we affirm the trial court's grant of summary judgment to Great American on all counts.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

THEIS and ERICKSON, JJ., concur.