Fourth Division
November 2, 2006

No. 1-04-0839

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE | ) | Appeal from the |
| INSURANCE COMPANY and JAMES MACHAK, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 02 CH 13736 |
| | ) | |
| ILLINOIS FARMERS INSURANCE COMPANY, | ) | |
| MID-CENTURY INSURANCE COMPANY, and | ) | |
| GEORGE YOUNG, | ) | Honorable |
| | ) | John Madden, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the opinion of the court:

The plaintiffs, State Farm Mutual Automobile Insurance Company (State Farm) and James Machak (Machak), sought declaratory and other relief from the defendants, Illinois Farmers Insurance Company and its affiliate, Mid-Century Insurance Company (hereinafter Farmers and its affiliate, Mid-Century, will be referred to as Farmers). On February 18, 2004, the trial court entered an order which granted State Farm and Machak's motion for partial summary judgment on counts I through IV but stayed all other proceedings in the trial court. The trial court also made a special finding that, as to the partial summary judgment order, "there is no just reason for delaying either enforcement or appeal or both." Official Reports Advance Sheet No. 22 (October 26, 2005), R. 304(a), eff. January 1, 2006. Farmers presents two issues for our review: (1) whether State Farm's direct action lawsuit against

Farmers was proper; and (2) whether the trial court erred in granting State Farm's motion for partial summary judgment. For the reasons that follow, we reverse the trial court's order granting the motion for partial summary judgment and remand this matter for further proceedings.

BACKGROUND

State Farm and Machak sought declaratory, injunctive and monetary relief from Farmers with respect to step-down provisions contained in Farmers' automobile liability policies issued to Illinois policyholders. A step-down provision in an insurance policy decreases the coverage for drivers who are not the insured person, a family member or a listed driver but, under the permissive user limitation in the policy, are insured while using the insured's automobile with the permission of the owner. Country Cos. v. Universal Underwriters Insurance Co., 343 Ill. App. 3d 224, 228 (2003).

Farmers' step-down provisions reduce the policy liability limits to the minimum liability limits required under sections 7-203 and 7-317(b) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7-203, 7-317(b) (West 2002)) (Financial Responsibility Law) when the insured's vehicle is being operated by a permissive user who is neither a resident of the named insured's household (nonresident permissive user) nor a family member or a listed driver. Farmers usually places its step-down provision in the additional definitions subsection of the liability section of the main body of the insurance policy or in the limits of coverage section in the main body of the insurance policy or in an endorsement to the policy.

On May 21, 2003, the trial court granted leave to State Farm to file a second amended complaint. Each of the first four counts in the second amended complaint was predicated on the claim of one of Farmers' insureds and each claim was based on the facts that apply to that insured's case.

The common thread in each insured's case is that Farmers invoked its step-down provision.

In count I of the second amended complaint, State Farm alleged that Susan Case was a State Farm insured and that she had a policy with underinsured motorist (UIM) coverage of $100,000. Case was riding as a passenger on a motorcycle being operated by Frank Mendoza when she was struck by a motorcycle being operated by James Turk. Case was severely injured in the motorcycle accident. Mendoza owned the motorcycle he was driving and he was insured by Farmers. He had a policy with liability coverage of $250,000 per person. Mendoza also owned the motorcycle that was being operated by Turk, a nonresident permissive user. Farmers also insured the motorcycle that Turk was operating, but stepped-down the liability limits on the policy covering Turk's motorcycle from $250,000 to $20,000 per person. State Farm paid $80,000 in UIM benefits to Case. However, her damages exceeded $500,000. In count I of its second amended complaint, State Farm seeks reimbursement from Farmers for payments it made as a result of Farmers implementing the step-down provisions in its policy.

In count II of the second amended complaint, State Farm alleged that Karen Bolen was a State Farm insured who was injured by Floyd Shirin, a nonresident permissive user of a Farmers-insured vehicle owned by Paul Imig. Shrin was also a State Farm insured with excess liability coverage. At the time of the accident, Bolen and Shirin were insured by State Farm, and they have assigned all of their rights against Farmers to State Farm. Farmers invoked the step-down provision of its policy and reduced the amount available to Bolen to $20,000 for liability and $15,000 for property damage. State Farm maintains that it has been damaged in the amount of $64,256.46, which is the total of the $40,000 paid by State Farm to Bolen under Shirin's State Farm policy, plus $24,265.46 net property

damage paid by State Farm on behalf of Bolen.  State Farm seeks reimbursement from Farmers.

In count III of the second amended complaint, State Farm alleged that Mid-Century, an affiliate of Farmers, insured a vehicle owned by Steven Olsen with policy limits of $250,000 for bodily injury liability.  Steve Olson's vehicle was being driven by his son, Nicholas Olsen.  Patricia Yawn, a State Farm insured, was injured in an accident with Nicholas Olsen, a permissive user of the Olsen vehicle.  State Farm paid its insured $5,000 from the medical payments coverage and $45,000 under its UIM coverage from the policy issued to Yawn.  State Farm seeks reimbursement of these first-party benefits directly from Farmers.

In count IV of the second amended complaint, State Farm alleges that George Young was injured by a vehicle driven by Charles Hovis, a permissive user of the vehicle owned by Mark Burr, a Farmers insured.  Farmers insured Burr's vehicle with liability limits of $250,000 per occurrence.  Hovis was a State Farm insured under a policy issued to his parents.  Farmers was defending Hovis as the primary carrier with step-down liability limits of $20,000.  State Farm insured Hovis as an excess carrier.  State Farm seeks reimbursement of all costs and attorney fees incurred in providing additional defense counsel to Hovis and seeks reimbursement of any monies it may be obligated to pay up to its $100,000 policy limits that may be available to Hovis under the State Farm policy should there be a settlement or judgment.

In addition to seeking reimbursement for the monies paid to its insureds, in counts I through IV of its second amended complaint, State Farm also seeks a declaration that Farmers' step-down provisions are void, invalid and unenforceable.  State Farm also seeks a declaration that the liability policy limits available to nonresident permissive users must be the same as other insureds under

Farmers' policies. State Farm further seeks reimbursement for monetary losses caused by Farmers invoking the step-down provisions.

In count V of the second amended complaint, Machak, a Farmers insured, seeks injunctive relief, monetary damages, punitive damages and attorney's fees for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 ILCS 505/1 et seq. (West 2002) (Consumer Fraud Act). In count VI of the second amended complaint, Machak and State Farm seek injunctive relief to prevent Farmers from invoking or enforcing its step-down provisions in the future. These counts are not at issue in this appeal.

Farmers filed a motion to dismiss the second amended complaint. State Farm responded to Farmers' motion by filing a motion for partial summary judgment on counts I through IV. The trial court found that the step-down provisions in the Farmers' insurance policies violate the public policy of the State of Illinois. Accordingly, the trial court denied Farmers' motion to dismiss but granted State Farm's motion for partial summary judgment on counts I through IV of its second amended complaint. In addition, the trial court included the Supreme Court Rule 304(a) language that "there is no just reason for delaying either enforcement or appeal or both." Official Reports Advance Sheet No. 22 (October 26, 2005), R. 304(a), eff. January 1, 2006. Finally, the trial court stayed the proceedings concerning all remaining counts "pending a resolution of the public policy issue on appeal."

### STANDARD OF REVIEW

The standards governing summary judgment motions are well established. Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 305 (2005). The purpose

of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. Northern Illinois, 216 Ill. 2d at 305, citing Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 42-43 (2004). Summary judgment is appropriate when, after viewing the case in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Northern Illinois, 216 Ill. 2d at 305, citing General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 (2002) (the search for a genuine issue of material fact encompasses a review of the pleadings, depositions, admissions, and any affidavits on file). Summary judgment is a drastic means of disposing of litigation which courts should utilize only after conducting an extraordinarily diligent review of the record so as not to preempt a party's right to fully present the factual basis for its claim. Northern Illinois, 216 Ill. 2d at 305-06, citing Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc., 214 Ill. App. 3d 1073, 1077 (1991). At the summary judgment stage, plaintiffs are not required to prove their cases. Northern Illinois, 216 Ill. 2d at 306, citing Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority, 172 Ill. 2d 243, 256 (1996). Although summary judgment is appropriate if a plaintiff cannot establish an element of his claim (Morris v. Margulis, 197 Ill. 2d 28, 35 (2001)), it should only be granted when the right of the moving party is clear and free from doubt. Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 483 (1998).

This court has also previously held that "[t]he construction of an insurance policy provisions is a question of law (Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 108 (1992)), which is reviewed de novo (Federal Deposit Insurance Corp. v. O'Malley, 163 Ill. 2d 130, 142 (1994))." Pekin Insurance Co. v. State Farm Mutual Insurance Co., 305 Ill. App. 3d 417, 419 (1999). Because the purpose of a summary judgment motion is to determine if a question of fact

exists, and because this case involves the construction of insurance policies, we conduct a <u>de novo</u> review. <u>Forsythe v. Clark USA, Inc.</u>, 361 Ill. App. 3d 642, 645 (2005), citing <u>Morris v. Margulis</u>, 197 Ill. 2d 28, 35 (2001).

ANALYSIS

Direct Actions

The threshold question we must address is whether State Farm has a right to sue Farmers. Farmers argues that the trial court erred in granting State Farm's motion for summary judgment because State Farm's second amended complaint seeking reimbursement for paying first-party benefits to its insureds is an impermissible direct action. According to Farmers, because State Farm's insureds do not possess judgments against Farmers' insureds, there is no way for State Farm to maintain a direct action for damages.

State Farm argues that Farmers' characterization of State Farm's payments as first-party payments is incorrect. State Farm argues that Farmers' coverage was primary and State Farm's coverage was excess by coincidence. State Farm argues that it should be allowed to recover payments made as an excess insurer when its coverage is invoked as a result of Farmers' void and unenforceable step-down provision. State Farm argues that counts I through IV of the second amended complaint do not constitute impermissible direct actions as that term is defined in Illinois. State Farm argues that it is seeking redress for Farmers' actionable wrongful conduct and is not seeking personal injury damages directly from an insurer.

Illinois public policy prohibits direct actions against an insurance company because of the negligence of its insured prior to obtaining a judgment against the insured. <u>Pekin Insurance Co. v.</u>

Cincinnati Insurance Co., 157 Ill. App. 3d 404, 407 (1987), citing Richardson v. Economy Fire & Casualty Co., 109 Ill. 2d 41, 47 (1985), and Marchlik v. Coronet Insurance Co., 40 Ill. 2d 327, 332-34 (1968); Garcia v. Lovellette, 265 Ill. App. 3d 724, 730-31 (1994), citing Zegar v. Sears Roebuck & Co., 211 Ill. App. 3d 1025, 1028 (1991) (The rationale for this "policy is to prevent the jury in the claimant's personal injury action against the tort-feasor from becoming aware that the defendant tort-feasor is insured and thus to avoid larger awards under a 'deep pockets' theory"). According to Garcia, the prohibition against direct actions is neither a completely mandatory nor inflexible prohibition against "third party practice." Garcia, 265 Ill. App. 3d at 731, citing Gianinni v. Bluthart, 132 Ill. App. 2d 454, 460-61 (1971). The prohibition against direct actions applies where "the issue of the insurer's liability would be intermingled with that of the insured and with the assessment of damages." Garcia, 265 Ill. App. 3d at 731, citing Reagor v. Travelers Insurance Co., 92 Ill. App. 3d 99 (1980).

In this case, State Farm sought a declaration that Farmers had invoked a void and unenforceable step-down provision in its policy in order to avoid having to pay money it rightfully should have paid. State Farm prayed for reimbursement in counts I through IV of its second amended complaint. Black's Law Dictionary defines reimbursement as both repayment and indemnification. Black's Law Dictionary 1312 (8th ed. 2004). Black's Law Dictionary defines indemnification as the action of compensating for loss or damage sustained. Black's Law Dictionary 783 (8th ed. 2004). We find the terms "reimbursement" and "indemnification" to be synonymous because Black's Law Dictionary includes the word "indemnification" in the definition for "reimbursement." Accordingly, we interpret the prayers for relief in counts I through IV of State Farm's second amended complaint

as requests for reimbursement or indemnification.

Indemnification involves an entity pursuing its rights in its own name, while subrogation involves a subrogee succeeding to another's right to payment. Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 316 (2004). Indemnification and subrogation are devices that are used to place the entire burden for a loss on the party that is ultimately liable for it. Home Insurance, 213 Ill. 2d at 316, citing 15 Couch on Insurance §217:5 (rev. 2004). Conversely, in the context of insurance law, contribution is an equitable principle permitting one coinsurer that has paid the total loss or a greater than its share of the loss to be reimbursed from other insurers liable for the same loss. Home Insurance, 213 Ill. 2d at 316, citing Cincinnati Cos. v. West American Insurance Co., 183 Ill. 2d 317, 322 (1998); Royal Globe Insurance Co. v. Aetna Insurance Co., 82 Ill. App. 3d 1003, 1005 (1980), and 15 Couch on Insurance §217:5 (rev. 2004). According to the Home case, contribution applies to multiple, concurrent insurance situations and is only available where the concurrent policies insure the same entities, the same interests and the same risks. Home Insurance, 213 Ill. 2d at 316, citing Royal Globe Insurance, 82 Ill. App. 3d at 1005. Home Insurance holds that the remedies of contribution and indemnity are mutually exclusive and contribution is prohibited where a party has a right to indemnity. Home Insurance, 213 Ill. 2d at 316, citing 18 C.J.S. Contribution §26, at 30 (1990).

By paying its insureds, State Farm had a right to seek reimbursement or indemnification in its own name from Farmers for the money it expended as a result of Farmers invoking the step-down provisions in its policies. Therefore, following Home Insurance, we find that this indemnification lawsuit does not constitute an impermissible direct action and that State Farm had a right to file an

indemnification lawsuit in its own name against Farmers. Home Insurance, 213 Ill. 2d at 316.

## Step-Down Provisions and Public Policy

Next, Farmers argues that the trial court erred in granting State Farm's motion for partial summary judgment on the issue of whether the step-down provisions in Farmers' policies violates public policy. Farmers argues that the policy language is clear and unambiguous and that the trial court never made a contrary finding. Farmers also argues that the disparity of limits between the classifications of different insureds under the policy is not prohibited by statute and is consistent with the public policy concerns of the Financial Responsibility Law. 625 ILCS 5/7-101 *et seq.* (West 2002)). Farmers argues that the purpose of the Financial Responsibility Law is to ensure that drivers using vehicles within the State of Illinois carry a minimum level of liability insurance. Farmers argues that there is nothing in the Financial Responsibility Law which requires an insurer to offer the same policy liability limits to nonresident permissive drivers that it provides to the primary insured. Farmers also argues that the Director of the Illinois Department of Insurance, whose responsibility it is to review insurance policy forms within the State, approved Farmers' policies which included the step-down provisions.

State Farm argues that the step-down provisions are contrary to Illinois law and violate Illinois public policy because Farmers' policies attempt to decrease liability coverage based upon the identity of the driver at the time of the accident, including his or her status as a nonresident permissive user. According to State Farm, the amount of liability insurance carried on an automobile should be determined by the coverage on the vehicle and not the status of the driver.

In Illinois, automobiles and other motor vehicles that are designed to be used on the public

highways must have liability insurance coverage. <u>Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.</u>, 215 Ill. 2d 121, 128 (2005), citing 625 ILCS 5/7-601(a) (West 2000). The Illinois Supreme Court has held that, "[u]nder the statute [Financial Responsibility Law], no person is permitted to operate, register or maintain registration of such a motor vehicle unless the vehicle is covered by a liability insurance policy." <u>Progressive</u>, 215 Ill. 2d at 128, citing <u>State Farm Mutual Automobile Insurance Co. v. Smith</u>, 197 Ill. 2d 369, 373 (2001).

Pursuant to the Financial Responsibility Law, "[t]he liability insurance mandated by section 7-601(a) must meet certain requirements." <u>Progressive</u>, 215 Ill. 2d at 128, citing 625 ILCS 5/7-601(a)(West 2000). The requirements may be found in section 7-317(b) of the Financial Responsibility Law. 625 ILCS 5/7-317(b) (West 2002). Section 7-317(b) provides, in pertinent part, as follows:

"(b) Owner's Policy.--Such owner's policy of liability insurance:

1. Shall designate by explicit description or by appropriate reference, all motor vehicles with respect to which coverage is thereby intended to be granted;

2. Shall insure the person named therein <u>and any other person using or responsible</u> for the use of such motor vehicle or vehicles <u>with the express or implied permission of the insured</u>;

3. Shall insure every named insured <u>and any other person using or responsible</u> for the use of any motor vehicle owned by the named insured and used by such other person <u>with the express or implied</u>

permission of the named insured on account of the maintenance, use or operation of any motor vehicle owned by the named insured, within the continental limits of the United States or the Dominion of Canada against loss from liability imposed by law arising from such maintenance, use or operation, to the extent and aggregate amount, exclusive of interest and cost, with respect to each motor vehicle, of $20,000 for bodily injury to or death of one person as a result of any one accident and, subject to such limit as to one person, the amount of $40,000 for bodily injury to or death of all persons as a result of any one accident and the amount of $15,000 for damage to property of others as a result of any one accident." (Emphasis added.) 625 ILCS 5/7-317(b) (West 2002).

According to Progressive, insurance policy provisions by which liability coverage is extended to persons to whom the insured has granted permission to use his or her vehicle are commonly referred to as "omnibus clauses." Progressive, 215 Ill. 2d at 128. "Where, as in Illinois, an omnibus clause is required by statute to be included in motor vehicle liability policies, our court has held that such a clause must be read into every such policy." Progressive, 215 Ill. 2d at 128-29, citing State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240, 243-44 (1998). "The purpose of omnibus provisions is to protect the public by ensuring that adequate resources are available to compensate for injuries sustained as a result of automobile accidents." State Farm Mutual Automobile Insurance Co. v. Hertz Claim Management Corp., 338 Ill. App. 3d 712, 717

(2003), citing <u>Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.</u>, 152 Ill. App. 3d 225, 232 (1987).

Generally, insurance policy terms are to be construed as written unless those terms violate public policy. <u>Illinois Farmers Insurance Company v. Cisco</u>, 178 Ill. 2d 386, 392 (1997), citing <u>Menke v. Country Mutual Insurance Co.</u>, 78 Ill. 2d 420, 423 (1980). Insurance policies are considered void if they conflict with a statute. <u>American Family Mutual Insurance Co. v. Baaske</u>, 213 Ill. App. 3d 683, 688 (1991).

According to the Illinois Supreme Court, "[t]he Illinois legislature has decided that the public policy of Illinois requires that an insurance company that issues a liability insurance policy or motor vehicle liability policy to an insured must cover the insured and any other person who has received the insured's express or implied permission to use the vehicle." <u>Smith</u>, 197 Ill. 2d at 375-76. It is undisputed that Farmers' insurance policies provided coverage to permissive users. The disputed issue remains as to the required amount of coverage: whether the coverage provided under the policy to a permissive user must be the same as the coverage provided to the named insured who owns the vehicle.

In drafting sections 7-317(b)(2) and (b)(3) of the Financial Responsibility Law, the legislature employed conjunctive rather than disjunctive language. 625 ILCS 5/7-317(b)(2),(b)(3) (West 2002). Section 7-317(b)(2) provides that an "owner's policy of liability insurance *** [s]hall insure the person named therein <u>and</u> any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured." (Emphasis added.) 625 ILCS 5/7-317(b)(2) (West 2002). Section 7-317(b)(3) provides that an "owner's policy of liability insurance

1-04-0839

\*\*\* [s]hall insure every named insured <u>and</u> any other person using or responsible for the use of any motor vehicle owned by the named insured and used by such other person with the express or implied permission of the named insured." (Emphasis added.) 625 ILCS 5/7-317(b)(3) (West 2002). We find that the language in sections 7-317(b)(2) and (b)(3) of the Financial Responsibility Law makes it clear that both the owner and the permissive user are to be treated the same in that they must both be insured under the terms of the insurance policy. <u>State Farm</u>, 182 Ill. 2d at 244; 625 ILCS 5/7-317(b)(2), (b)(3) (West 2002). However, the Financial Responsibility Law does not provide that the liability limits for the owner and permissive user must be identical. 625 ILCS 5/7-301 <u>et seq</u>. (West 2002). Farmers' policies provide coverage for "[a]ny other person using [the named insured's] car, but only up to the minimum required limits of the Illinois Financial Responsibility Law." Additionally, Farmers utilizes its form s2245 declaration, which provides that Farmers "will provide insurance for an insured person, other than [the insured], a family member, or a listed driver, but only up to the minimum required limits of your state's Financial Responsibility Law of $20,000 per person and $40,000 per occurrence for bodily injury, and $15,000 for property damage."

Courts will attribute the " 'plain, ordinary, and popularly understood meaning' " to the clear and unambiguous language included in an insurance policy. (Emphasis omitted.) <u>Paris-Custardo v. Great American Insurance Co. of New York</u>, 363 Ill. App. 3d 824, 827 (2006), quoting <u>Outboard Marine Corp. v. Liberty Mutual Insurance Co.</u>, 154 Ill. 2d 90, 108 (1992). "Policy language is ambiguous only if it is susceptible to more than one reasonable interpretation." <u>Atwood v. St. Paul Fire & Marine Insurance Co.</u>, 363 Ill. App. 3d 861, 863 (2006), citing <u>Gillen v. State Farm Mutual Automobile Insurance Co.</u>, 215 Ill. 2d 381, 393 (2005). We find that the language in the policies and

-14-

in the declarations is both clear and unambiguous. Additionally, because Farmers' policies do not attempt to reduce its liability coverage for permissive users below the statutory minimums, we find that Farmers' policies comply with section 7-317 of the Financial Responsibility Law. 625 ILCS 5/7-317 (West 2002). "This court may not establish a public policy which is contrary to the public policy that the Illinois legislature has determined is appropriate for the State of Illinois." Smith, 197 Ill. 2d at 376, citing Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 522 (2000), quoting People v. Garner, 147 Ill. 2d 467, 476 (1992) ("courts may not legislate, rewrite or extend legislation. If the statute as enacted seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to the court"). Accordingly, we hold that the clauses in Farmers' policies that limit the liability limits for permissive drivers only up to the limits of the Financial Responsibility Law are not contrary to public policy.

In this case Farmers cites Dairyland Insurance Co. v. Linak, 208 Ill. App. 3d 892 (1991), John Deere Insurance Co. v. Allstate Insurance Co., 298 Ill. App. 3d 371 (1998), and State Farm Mutual Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240 (1998), in support of its position. In Dairyland, the policy contained a clause that limited the liability limits for an insured person, other than the named insured or a family member, up to the limits of the Financial Responsibility Law only. Dairyland, 208 Ill. App. 3d at 894. While the Dairyland court found the limitation clause ambiguous because it could be read in two ways, the court still found (1) that the limitation clause applied, and (2) that the trial court did not err in limiting Farmers' liability for the acts of its nonfamily member drivers. Dairyland, 208 Ill. App. 3d at 896. The holding in Dairyland supports our holding in this case, where we limited Farmers' liability for the acts of a permissive or a nonfamily member driver.

The John Deere court held that section 5-101(b)(6) of the Illinois Vehicle Code (Code) (625 ILCS 5/5-101(b)(6) (West 1994)) and section 5-102(b)(4) of the Code (625 ILCS 5/5-102(b)(4) (West 1994)) was intended to apply to customer/permissive users or test drivers who expose the public to a risk when they test drive vehicles. John Deere, 298 Ill. App. 3d at 377-78. The John Deere court noted (1) that the Code requires automobile dealerships to provide minimum liability coverage for the automobiles, and (2) that the State Farm court held that a liability policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission. John Deere, 298 Ill. App. 3d at 378-79. The John Deere court held that since the car dealership had obligated itself to a $500,000 limit in its certificate of insurance, the company would not be permitted to deny the coverage amount it contracted for. John Deere, 298 Ill. App. 3d at 379.

We find John Deere to be consistent with the holding in our case. First, John Deere found that the amount of liability insurance that must be carried on a particular automobile is determined by the vehicle and not by the operator of the vehicle. 298 Ill. App. 3d at 377. We found that Farmers is the primary insurer because it insured the vehicle that injured the State Farm insured. Second, John Deere found that the policy must cover any person using the vehicle with the named insured's permission. 298 Ill. App. 3d at 379. We also found that since Farmers insured the vehicle that caused the injury, it must insure the permissive user. Third, John Deere placed the minimum liability limits of coverage for bodily injuries on the amount contracted for. 298 Ill. App. 3d at 379. Finally, we enforced Farmers' policy which limited the liability for personal injuries caused by permissive drivers to the limits of the Financial Responsibility Law.

In State Farm, the supreme court was presented with the question of whether a car dealer's garage insurance policy covered the liability of a separately insured customer who was involved in an accident while test driving one of the dealer's vehicles. State Farm, 182 Ill. 2d at 241. The State Farm court answered the question in the affirmative and held that under Illinois law, a car dealer's liability policy must provide coverage for test drivers. State Farm, 182 Ill. 2d at 243. In State Farm, the court explained its holding by stating that a liability policy issued to the owner of the vehicle must cover the named insured and any other person using the vehicle with the named insured's permission. State Farm, 182 Ill. 2d at 244. Finally, the State Farm court noted that, pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the automobile rather than on the insurers of the operator. State Farm, 182 Ill. 2d at 246.

In conclusion, we hold (1) that State Farm had a right to file an indemnification lawsuit in its own name against Farmers; and (2) that the minimum liability limits of coverage for permissive drivers who cause bodily injuries is based on the amount contracted for in the vehicle owner's, in this case Farmers', policy. We believe that the responsibility for setting the liability limits for permissive drivers in insurance contracts is a matter within the exclusive province of the state legislature. Therefore, until there is a change in the law, we must enforce the contractual terms of the insurance policies and the Financial Responsibility Law as written. 625 ILCS 5/7-100 et seq. (West 2002).

CONCLUSION

In light of the foregoing, we reverse the trial court's order granting the motion for partial summary judgment and remand the matter for further proceedings.

Reversed and remanded.

O'BRIEN, J., and GALLAGHER, J., concur.